No. 88-46

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

PIPE INDUSTRY INSURANCE FUND
TRUST OF LOCAL 41,

        Plaintiff and Respondent,

-vs-

CONSOLIDATED PIPE TRADES TRUST
OF MONTANA,

        Defendant and Appellant.

---

APPEAL FROM: District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable Arnold Olsen, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Anderson, Brown, Gerbase, Cebull, Fulton, Harman and
Ross; Michael P. Heringer, Billings, Montana

    For Respondent:

        Burgess, Joyce & Whelan; Thomas F. Joyce, Butte,
Montana

---

Submitted on Briefs: May 19, 1988

Decided: August 8, 1988

Filed: AUG 8 1988

*Ethel M. Harrison*

Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

Consolidated Pipe Trades Trust of Montana (Consolidated), appeals the Second Judicial District Court's decision in favor of Pipe Industry Insurance Fund Trust of Local 41, (Pipe Industry). We affirm.

Consolidated presents the following issues for review:

(1) Whether the Court erred when it instructed the jury that it could not consider any evidence outside the terms of the agreement?

(2) Whether the Court erred when it refused testimony concerning the negotiations of the reciprocity agreement?

(3) Whether the Court erred when it instructed the jury on the legal principal of waiver?

(4) Whether the verdict is supported by substantial evidence?

(5) Whether the Court erred when it awarded prejudgment interest?

(6) Whether the prejudgment interest was calculated properly?

The relevant facts are as follows: Both parties collect funds from employers of union members under the jurisdiction of their respective locals. The funds finance trusts used to provide insurance plans for union members.

In 1980, members of the Butte local working under the jurisdiction of the Billings local faced ineligibility under both the Butte local's insurance and the Billings local's insurance. To solve this problem, Consolidated, representing the Billings local, agreed to collect funds for members of the Butte local working under the Billings local's jurisdiction. The funds collected by Consolidated were to be remitted to Pipe Industry for the trust fund administered by Pipe Industry. Pipe Industry agreed to do the same for members of the Billings local working under the jurisdiction of the Butte local.

To effectuate this agreement, the parties executed a written document. The pertinent parts of this document read as follows:

> 2. Each Trust Fund party hereto shall collect and receive the Employer contributions due for the work of each Temporary Members who has signed and deposited a transfer authorization card with the transferring fund, and shall keep separate accounts of these collections.
>
> 3. No party shall be liable to any other party for any sums whatsoever except to the extent of contributions made on Temporary Members that are in fact received. Each party shall bear all expenses of collection, administration or accounting which it shall incur hereunder, and shall charge no part thereof to any other party.
>
> 4. Each Trust Fund party hereto shall make an accounting monthly of the monies received by it during the period just ended on behalf of any Temporary Members and shall remit to the Temporary Members' Home Fund all Employer contributions received by it on behalf of its Temporary Members. Said remittance must be made within thirty (30) days after the close of the calendar month and within thirty (30) days of termination of this Agreement as provided in Sections 11 and 12 hereof. However, any Temporary Member may direct the

3

Transferring Fund in writing, with 30 days notice, that contributions on his behalf not be returned to his Home Fund.

10. This Agreement may be modified or amended at any time by an instrument in writing executed by the parties hereto. Any party hereto may at any time withdraw from this Agreement by serving by Certified Mail on the other party hereto (at the address listed on the last page hereof) a notice of its intention to withdraw, not less than sixty (60) days prior to such date of withdrawal. Upon the effective date of withdrawal by any party hereto, this Agreement shall be terminated.

In 1981, the parties began performance under the agreement. Consolidated collected funds from employers of Butte workers at the rate of $1 per hour of work. This rate equaled the rate Consolidated collected for the Billings local's members. However, Consolidated remitted only 85¢ of each dollar collected for Butte workers to Pipe Industry because this was the amount needed to maintain coverage under the trust administered by Pipe Industry. Clause four of the written contract, however, provides that all funds collected shall be remitted.

On September 1, 1982, the amount needed to maintain coverage under Pipe Industry's trust increased to $1 per wage hour. Consolidated continued to collect $1, and increased the amount remitted to Pipe Industry from 85¢ to $1. Thus, during this period, Consolidated complied with clause four of the contract.

On September 1, 1983, Consolidated's rate rose to $1.45, and employers of Butte workers under Consolidated's jurisdiction began to pay this rate. However, Consolidated continued to remit only $1 to Pipe Industry.

On August 1, 1984, Pipe Industry's rate increased to $1.15, and Consolidated began to remit that amount from the $1.45 it continued to collect for Butte workers. After

4

September 30, 1984, no members of the Butte local worked under the jurisdiction of the Billings local. Thus, no funds are disputed after that time.

On March 28, 1986, Pipe Industry filed suit against Consolidated claiming that Consolidated breached the parties' agreement by not remitting the full amount it collected for Butte workers. The claim went to trial before a jury in Butte, and the jury verdict held Consolidated liable for the difference between the amounts collected and the amounts remitted. Consolidated unsuccessfully claimed that Pipe Industry had waived its right to the funds awarded by the jury. Consolidated also unsuccessfully claimed that an addendum to the agreement modified the contract to allow its collection procedures. An award of interest accompanied the judgment for Pipe Industry.

I.

Consolidated claims that the lower court erred by giving the following instruction:

> Whenever the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms. Therefore there can be between the parties <u>no evidence of the terms of the agreement</u> other than the contents of the writing except that other evidence may be offered to explain an extrinsic ambiguity in the written agreement. It is for the judge to construe a written agreement giving effect to all of its terms and to determine if an extrinsic ambiguity exists. I have concluded that there is no extrinsic ambiguity in Exhibit 3, the original reciprocity agreement made by the parties, and that agreement required that all monies received from employers by the defendant trust were to be remitted within 30 calendar days after the close of each calendar month to the plaintiff trust. (Emphasis added.)

Consolidated argues that this instruction erroneously precluded the jury from considering extrinsic evidence regardless of its source. More specifically, Consolidated claims prejudice because the instruction prohibited the jury from considering extrinsic evidence of its waiver theory. Thus, according to Consolidated, the above instruction mislead the jury and prejudiced its case. Pipe Industry responds that evidence offered in the lower court on waiver was properly admitted to show waiver, and properly excluded to show variation of the contract terms. We agree.

The instruction set out above paraphrases parts of § 28-2-905, MCA. This Court's decisions interpreting § 28-2-905, MCA, and the language of the statute itself, demonstrate that parol evidence may be admitted for one purpose, but not for another. See, e.g., Martin v. Laurel Cable T.V., Inc. (Mont. 1985), 696 P.2d 454, 42 St.Rep. 314; Rase v. Castle Mountain Ranch, Inc. (Mont. 1981), 631 P.2d 680, 38 St.Rep. 992. In this case, despite Consolidated's contentions to the contrary, extrinsic evidence was taken and argued at trial. During defendant's closing, Consolidated's counsel summarized this evidence:

> Billings has submitted evidence that shortly after the reciprocity began between these two people -- two trusts in 1981, it sent an addendum to the reciprocity agreement. And Butte maintains that out of the large volume of mail that it receives, including correspondence and numerous checks, that it did not receive this addendum. The evidence shows that Billings Trust sent this addendum, at the same time it sent it to 15 other Trusts who it had reciprocity agreements with at the same time. This is the only piece of mail that has been claimed to have never been received. The addendum clearly showed how much Billings planned to transfer to Butte. But even without the addendum, Billing's conduct showed that it was always going to pay the lower amount which Butte

6

was fully aware and for which they accepted without complaint.

Therefore, by its conduct, Butte assented to the change of the terms of the reciprocity agreement, and agreed to accept those terms.

In summary, from day one, the Billings Trust paid the Butte Trust sufficient funds to provide insurance coverage for its members of local 41 in Butte when they worked within the jurisdiction of Local 30 in Billings. These payments almost amounted to $91,000 over a three-year period.

And because the Plaintiff continued to accept these numerous payments without protest, they either waived their right to claim a higher contribution rate at the time, or they agreed to accept the change in the reciprocity agreement and, therefore, Billings was only required to remit the amount that it did.

For these reasons, the Defendant, Consoldiated Pipe Trades Trust respectfully requests that you return a verdict in its favor and award no money to the Plaintiff.

The foregoing shows that the dispute hinged not on parol evidence going to prove the effect of the agreement's terms. Rather, the dispute concerned whether the parol evidence, which was admitted, showed either waiver on the part of Pipe Industry in enforcing the undisputed terms of the contract, or subsequent amendment of clause four by the addendum.

This Court must review jury instructions keeping in mind the evidence offered. Baker National Bank v. Lestar (1969), 153 Mont. 45, 52, 453 P.2d 774, 777. Our review must also insure that the lower court provided instructions adaptable to the objecting party's theory on the case when credible evidence supports the theory. Rix v. General Motors Corp. (Mont. 1986), 723 P.2d 195, 198, 43 St.Rep. 1296, 1298.

Jury instructions on appeal are to viewed in their entirety, and in light of the evidence in the case. Bushnell v. Cook (Mont. 1986), 718 P.2d 665, 669, 43 St.Rep. 825, 830. Viewing the instructions in this case in their entirety, we

7

hold that: the lower court's instruction was compatible with the evidence in the case; that the arguments of counsel and the addition of instructions on waiver consistently presented the waiver issue apart from the prohibition on altering the terms of the contract by parol evidence; and that allowance of an instruction on waiver, and allowance of evidence on waiver, provided Consolidated with an adequate means to present its theory on waiver. More succinctly, our conclusion on this issue is that an instruction prohibiting consideration of parol evidence on what the contract language required for performance may coexist with an instruction and evidence on waiver. The closing argument of defense counsel demonstrates that this fact was not lost to appellant, and we must presume it was also not lost to the jury. See, e.g., Bass v. Barksdale (Tenn. App. 1984), 671 S.W.2d 476, 489 (reviewing court presumes jury understood instructions). Thus, we affirm on this issue.

## II.

Consolidated's argument on issue two is largely settled by issue one. The argument assigned by appellant as issue two is that the lower court erred in not allowing evidence on negotiations of the contract. Consolidated argues that the testimony of witness Cliff Powell should have been allowed as relevant to waiver.

Consolidated's faulty logic fails to support this argument. Section 28-2-905, MCA, prohibits evidence of the terms of an agreement:

> except in the following cases:
>     (a)   when a mistake or imperfection of the writing is put in issue by the pleadings;
>     (b)   when the validity of the agreement is the fact in dispute.

8

(2)    This section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as described in 1-4-102, or other evidence to explain an extrinsic ambiguity or to establish illegality or fraud.

The objection in the lower court concerned a question solicitting information on contract negotiations. Defense counsel stated in the defense's offer of proof that:

MR. HERINGER:    Your Honor, in pre-trial agreement I provided the Court with the case law that parole evidence is admissible when there is a question of waiver before the Court. And this goes to the fact of what was waived and why it was possibly waived by them.
That question simply asks what were the terms of the agreement as to what Mr. Powell understood of them.

As shown by resolution of issue one, the distinction between waiver and parol evidence allowed to establish a variance from the contract's terms explains and justifies the lower court's decision to sustain the objection to Mr. Powell's testimony on the contract negotiations. Thus, we affirm on issue two.

## III.

Consolidated contends that the lower court erred by refusing to give one of the instructions on waiver offered by Consolidated, and by giving an instruction offered by Pipe Industry on waiver. The specific contention is that the two waiver instructions confused and mislead the jury.

Pipe Industry's instruction on waiver reads as follows:

You are instructed a party may waive a right afforded to him by contract. The party asserting a

waiver, the defendant in this case, has the burden
of proving waiver.

A waiver is defined by law as a voluntary and
intentional relinquishment of a known right.
Waiver must be based on the words or conduct of the
party against whom waiver is claimed, in this case,
the plaintiff. The defendant must prove language
or conduct by the plaintiff showing in an
unequivocal manner that the plaintiff voluntarily
and intentionally relinquished its right to receive
the full payments as provided by the contract.
Mere failure to take steps to enforce a legal right
under a contract in a timely manner is not, by
itself, sufficient to constitute proof of waiver.

Consolidated objected to the above instruction
contending that the last sentence inaccurately stated the law
and effectively negated its waiver theory. The same
assertions are made on appeal. Pipe Industry answers that
the last sentence served the purpose of distinguishing
between waiver and other defenses which preclude suits based
on failure to bring them in a timely manner, i.e., laches or
statute of limitations.

The last sentence constitutes a correct statement on the
law of waiver. See, e.g., Boles v. Ler (Mont. 1986), 719 P.2d
793, 43 St.Rep. 1035 (vendor's mere failure to return late
payments did not preclude vendor from enforcing foreclosure
rights). Pipe Industry, as well as Consolidated, has the
right to instructions supporting its theory of the case.
Pipe Industry's theory was that Consolidated failed to prove
waiver. Evidence supported this contention, and
distinguishing waiver from other prohibitions on bringing
causes of action furthered understanding of this theory.
Thus, under the circumstances of this case, the lower court
acted within its discretion in giving the instruction.

Consolidated argues that the lower court erred by
failing to give the instruction on waiver it offered. The

offered instruction was set out in Thiel v. Johnson (Mont. 1985), 711 P.2d 829, 831, 42 St.Rep. 2010, 2012. Pipe Industry responds that the instruction in Thiel was not approved by this Court because the issue in Thiel on this instruction was settled by the appellant's failure in Thiel to object to the instruction in the lower court. See Thiel. 711 P.2d at 832. We agree that a variation from the instruction set out in Thiel is not a violation of any rule from Thiel. This Court in Thiel specifically refused to review the validity of part of the instruction. Thus, Thiel does not control.

The refused instruction reads as follows:

> You are instructed that when a payment for a sum certain is due pursuant to a contract, that payment may be waived by one who is to receive the payment. The waiver may be either express or implied.
>
> An implied waiver occurs when a contract payment is received and the amount paid is less than contract terms call for and the person who is to receive the payment makes no attempt to collect the full amount within the [sic] reasonable time. A reasonable time is presumable a short time after payment is due, and before the next payment is due.
>
> An express waiver occurs when one who is to receive payment tells the one who is to make the payment either orally or in writing, that the full amount of the payment need not be made. An express waiver must continue for the period of time specified by the one who is to receive the payment.

The District Court gave two instructions on waiver which adequately covered the applicable law. The District Court refused the instruction offered by appellant holding it inapplicable to the case.

No error may be predicated on the trial court's failure to give an instruction when other instructions adequately

cover the applicable law, or where the pleadings and evidence show that the offered instruction is inapplicable. Doble v. Lincoln County Title Co. (Mont. 1985), 692 P.2d 1267, 1271, 42 St.Rep. 128, 132. We refuse to pass on the sufficiency of the Thiel instruction offered in this case because the two waiver instructions given by the Court adequately address the law on waiver in light of the evidence presented at trial.

A further contention on this issue concerns the giving of two waiver instructions. Consolidated claims that the lower court erred because the two instructions conflict and confuse on a material issue. Consolidated also claims they are repetitive.

These two contentions by Consolidated appear to be mutually exclusive, i.e., the presence of facts supporting the one appears to exclude facts supporting the other. We have reviewed both contentions and find merit in neither.

We have already set out the instruction on waiver offered by Pipe Industry, and given by the trial court. The second instruction on waiver, offered by Consolidated, and given by the lower court, reads as follows:

> A party may waive the benefit of a contract. Waiver means that a person is precluded from asserting a right, a claim or privilege because he has previously knowingly, voluntarily and intentionally given up that right, claim or privilege.

> Waiver must be a voluntary act and implies a knowing choice by a person to give up something of value or forego a right or advantage which he might have demanded and insisted upon. It only involves the conduct of the party against whom the waiver is asserted and consideration is not necessary for the doctrine to apply, nor need there be a detriment or harm to the party claiming the waiver.

> A person may waive a right, claim or privilege only if he has knowledge of the facts which are material

12

or important to his decision. This knowledge may either be actual or constructive. Constructive knowledge is knowledge which one has the opportunity to acquire by the exercise of ordinary care and diligence, whether or not such knowledge is, in fact, acquired. If a person is ignorant of a material or important fact, that is, if he lacks actual or constructive knowledge, a waiver is not possible.

This instruction properly covers areas left out of the instruction offered by Pipe Industry. Conversely, the instruction offered by Pipe Industry covers areas left out of this instruction. As pointed out by Consolidated, other portions are simply repetitive, not conflicting. See, e.g., Pizza v. Wolf Creek Ski Development Corp. (Colo. 1986), 711 P.2d 671, 681 (instructions not essentially identical are not unduly repetitive). Thus, this contention fails, and we affirm on this issue.

## IV.

Consolidated contends that substantial evidence does not support the jury's verdict. In particular, Consolidated contends that evidence it presented conclusively demonstrates that Pipe Industry waived its rights under the contract.

We disagree. To counter Consolidated's argument that Pipe Industry knowingly and intentionally relinquished the right to a portion of payments guaranteed under the contract, Pipe Industry presented evidence showing that other considerations influenced its decision to forestall prosecution for payment. The verdict demonstrates that the jury rejected Consolidated's argument on the basis of this evidence. Inasmuch as substantial credible evidence supports the verdict, we must affirm on this issue. Clark v. Norris (Mont. 1987), 734 P.2d 182, 184-85, 44 St.Rep. 444, 445.

13

V.

Consolidated claims that the lower court erred by awarding prejudgment interest. To support this contention, Consolidated cites portions of § 28-1-1202(2), MCA, and § 27-1-114, MCA.

Section 28-1-1202(2), MCA, reads as follows:

An offer of payment or other performance duly made stops the running of interest on the obligation and has the same effect upon all incidents of the obligation as a performance thereof, whether or not the title to anything offered is transferred to the creditor.

Consolidated contends this statute avails it of a defense to interest on the difference between the amount due under the contract, and the amount actually paid under the contract. The specific contention is that:

Consolidated offered and Pipe Industry accepted these payments as payments in full.

This thinly disguised repetition of Consolidated's faulty waiver argument fails to persuade this Court to reverse on this issue.

Consolidated makes the same argument in regard to § 27-1-214, MCA, which reads:

Accepting payment of the whole principal, as such, waives all claim to interest.

This assertion also fails because the jury verdict found that Consolidated did not pay the whole principal.

We hold interest was properly awarded under § 27-1-211, MCA. See Price Building Services, Inc. v. Holms (Mont. 1985), 693 P.2d 553, 42 St.Rep. 84. Thus, we affirm on this issue.

14

## VI.

Consolidated contends that the lower court improperly calculated the interest, and Pipe Industry concedes the point. Thus, we remand only for the purpose of a proper calculation as agreed by the parties.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices