No. 88-389

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

BRUNO BOYER,

        Plaintiff and Appellant,

  -vs-

JOHN RICHARD ETTELMAN,

        Defendant and Respondent.

---

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Russell K. Fillner, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Dane C. Schofield; Peterson, Schofield & Leckie,
Billings, Montana

    For Respondent:

        William J. Gregoire; Smith, Walsh, Clarke & Gregoire,
Great Falls, Montana
Sherman V. Lohn; Garlington, Lohn & Robinson, Missoula,
Montana

Submitted on Briefs:  Dec. 2, 1988

Decided: January 6, 1989

Filed:

ED SMITH
---
Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

This appeal concerns an alleged accord and satisfaction in settlement of a personal injury claim. The District Court of the Thirteenth Judicial District, Yellowstone County, sat as finder of fact and held that the parties reached an accord and that appellant's cashing of respondent's check constituted a satisfaction. We affirm.

Appellant Bruno Boyer presents the following issues for review:

(1) Whether the Court erred in concluding that the draft itself operated as a full and final release?

(2) Whether the Court erred in concluding that an accord and satisfaction resulted from the conduct between Boyer and Hartford?

(3) Whether the findings of the Court are supported by substantial evidence?

Respondent, Ettleman, and his insurer, Hartford Accident and Indemnity, (Hartford), complain that the issues should be changed to reflect the lower court's focus on determining the existence of an accord and satisfaction. We agree and determine this appeal by reviewing Bruno Boyer's issue (2): Whether the District Court erred in concluding an accord and satisfaction resulted from the parties' conduct?

The District Court's essential conclusion on accord and satisfaction reads:

2

> That the draft was tendered to the plaintiff under such circumstances that he is bound to know that it was tendered in full settlement of the claim resulting in an accord and satisfaction between the parties and a discharge of the plaintiff's whole claim.

The following facts are relevant to reviewing this conclusion: Ettleman's car collided with a vehicle being driven by Rose Gonzales. Boyer, Gonzales, and several other passengers in Gonzales's car were injured. Hartford admitted liability for the claims against Ettleman. Ettleman's insurance provided $55,000 in coverage.

Hartford's employee Charles Gailey attempted to divide the $55,000 among the injured parties. Boyer's father, Melvin Boyer, negotiated with Gailey for Boyer's share of the insurance. Attorneys representing other claimants also negotiated with Gailey.

Melvin Boyer demanded $35,000 for his son's claim. Gailey rejected the offer. Gailey settled with most of the other claimants, and informed Melvin Boyer that only $10,000 of the $55,000 in coverage remained. Gailey proposed that Bruno Boyer accept the $10,000 as a full settlement. Melvin and Bruno Boyer met with Gailey to discuss the offer. Melvin Boyer instructed his son to reject Gailey's proposal. Gailey told Bruno Boyer that as an adult, he could settle the claim without his father's authorization. Gailey then gave him a release instrument and a check for $10,000 to take home. Bruno Boyer accepted and negotiated the check but never signed the release.

At trial Bruno Boyer testified that Gailey lead him to believe that the check was for coverage of his medical bills only, and that even if he accepted and cashed the check, he

3

could still pursue a claim for his other damages. He relies principally on Gailey's statement during the meeting that if $10,000 were not enough, Boyer would have to sue. According to Boyer, this statement reasonably lead him to believe he could cash the check, and sue for the rest of his damages.

Boyer also claims that the following facts and contentions support his claim: Gailey never communicated the limits of the policy to Boyers; Gailey told Boyers that either a judge would determine each claimant's share, or a meeting would be held and the claimants could attempt to determine shares; Gailey settled with other claimants prior to informing Boyers that no meeting would occur; Boyers' demand for a $35,000 settlement separated medical damages from other damages; at the time of the settlement meeting, Bruno Boyer's medical bills totaled $6,248, and Boyers told Gailey that at least $2,000 would be needed in the future; Gailey told Boyers at the meeting that the $10,000 should be used to pay medical bills; Gailey wrote to Bruno Boyer shortly after the settlement meeting and stated that medical bills should be paid from the $10,000.

Gailey testified that both Melvin and Bruno Boyer appeared to understand that the $10,000 could be retained by Bruno Boyer only if he agreed to accept the money in full settlement of the claim. He also testified that he told Bruno Boyer that if he wanted to keep the money, he must sign the release and send it back to Hartford. Gailey admitted telling Bruno and Melvin Boyer that they would have to sue to collect more than $10,000. However, Gailey claims Boyer mischaracterizes his statement. According to Gailey, he told Boyers if they refused the settlement offer, he would tender the remainder of the coverage, that is, $10,000, to the District Court, and they would have to sue to collect on their claim. Gailey testified that he never lead Boyers to

4

believe that he tendered the $10,000 for medical damages only.

Hartford points out that beneath the names of the insurer and the claimant on the front of the check in regular print Hartford typed in the words "In Full Settlement of All Claims". Harftord also contends that the following findings of the lower court are supported by substantial evidence and refute Boyer's contentions:

19. That in August or September, 1982, Gailey contacted Boyer and his father and informed them that there was Ten Thousand and no/100 Dollars ($10,000) of the policy proceeds remaining with which to settle Boyer's case.

20. That Bruno and Mel Boyer traveled to Great Falls, Montana to pick up the check. A friend of theirs, Gerald Davidson, accompanied them on the trip.

21. That when Bruno and Mel Boyer met with Gaily, Mel tried to get Gailey to increase his $10,000 offer of settlement, which Gailey refused to do. Mel Boyer then told Gailey that he would not sign anything.

22. That Gailey then offered a $10,000 draft and a release to Bruno Boyer and told him he could sign the release since he was now 18 years old.

23. That Bruno Boyer took the $10,000 draft and the release from Gailey, saying he wanted to think about it, and returned to Billings, Montana.

24. That Gailey told Bruno Boyer if he wanted to accept the $10,000 to sign the release and return it to him.

25. That Bruno Boyer cashed the draft, putting $4,000.00 in his savings account and giving $6,000 to his father.

26. That Bruno Boyer believed he threw the release away, but later learned his father was in possession of the release form.

27. That Gailey, subsequent to giving the draft and release form to Boyer, sent a letter and a separate release form to Boyer, asking that he review and execute the same. This Boyer refused to do.

5

28. That Gailey would, as a standard course of business, when a claimant was not sure whether they wanted to accept a check as full and final payment, send both the draft and a release with the claimant, with the instructions that if they accepted the draft they were to sign and return the release.

29. That the Boyers knew that the $10,000.00 check was being tendered as full and final settlement of Bruno's claims. Mel Boyer knew this at least as of the September 8, 1982 meeting with Gailey in Great Falls, and Bruno Boyer learned this from his father at least by the time he cashed the draft, if not before. He knew he was to sign and return the release to Gailey if he cashed the check.

30. The Boyers have retained the $10,000.00 they received and have not refunded or offered to refund the money or any part thereof to the Hartford.

31. The Boyers instituted this action a full twenty seven months after cashing the $10,000 draft.

The resolution of this case in the lower court depended largely on choosing between conflicting evidence. Boyer argues for this Court to reweigh the conflicting evidence. Rule 52(a), M.R.Civ.P., constricts our review of findings of fact, and this Court affirms if substantial evidence supports the lower court's findings. Price Bld. Service Inc. v. Christiansen (Mont. 1985), 697 P.2d 1344, 1347, 42 St.Rep. 440, 444.

Generally, a disputed, unliquidated obligation may be extinguished where the obligated party offers to exchange an amount different from or less than the obligation in full settlement of the obligation. Section 28-1-1401, MCA. And the party owed the obligation agrees to accept and does accept the amount offered in full settlement of the obligation. Section 28-1-1402, MCA. See also Sawyer v. Somers Lumber Co. (1929), 86 Mont. 169, 282 P. 852. The intent of the parties generally controls the issue.

6

Barbarich v. Chicago etc. Ry. Co. (1932), 92 Mont. 1, 10, 9 P.2d 797, 799.

This case hinges on whether Boyer's acceptance and negotiation of the check from Hartford occurred under such circumstances that Boyer was bound "to know that the intention was to make the payment in full settlement of the claim ..." Sawyer, 282 P. at 854. Put differently, in the case of a disputed and unliquidated obligation, the finder of fact properly concludes an accord and satisfaction occurred where the obligated party makes:

> an offer in full satisfaction of the obligation, accompanied by such acts and declarations as amount to a condition that if it is accepted, it is to be in full satisfaction, and the condition must be such that the party to whom the offer is made is bound to understand that if he accepts it, he does so subject to the conditions imposed.

1 Am.Jur.2d Accord & Satisfaction § 1 (1962).

The District Court findings thoroughly set out the circumstances surrounding acceptance of the check. Substantial evidence supports the findings.

For example, prior to the meeting, evidence demonstrated that both Boyers knew that Gailey wanted to settle the claim within the remaining amount of coverage. Bruno Boyer first denied that he knew only $10,000 remained, and then admitted he may have communicated the policy limits to a friend, Gerald Davidson, prior to the meeting. Davidson testified that Bruno had discussed the $10,000 policy limit with him prior to the settlement meeting.

Bruno Boyer also claimed that he understood at the settlement meeting that the $10,000 would be a medical damages settlement only. However, he also testified he took the release home after Gailey told him to sign and return the

7

release, and that he knew that the release purported a full and final settlement. Bruno also witnessed the argument at the settlement meeting between Melvin Boyer and Gailey over the adequacy of $10,000 as a complete settlement. Moreover, it is undisputed that at the time of the settlement meeting, medical bills totaled under $10,000.

Boyer denied reading the face of the check except that he read his name, noted Gailey's signature, and the figure recited in payment. He testified that the full settlement notation escaped his attention. Nevertheless, the presence of the notation provides evidence for the District Court's conclusion.

These facts and circumstances, when considered with Gailey's version of events, constitute sufficient evidence to sustain the District Court's decision. This Court "will not overturn the holdings or findings of a trial court simply because the evidence furnishes reasonable grounds for different conclusions." Price, 697 P.2d at 1397. Thus, we affirm.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

8