No. 94-249

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

MARK C. EATINGER, individually and as
Personal Representative of the Estate
of Ruth Eatinger, deceased, BETH ANN
HENDERSON, and JULIE SILVAN,

        Plaintiffs and Respondents,

    v.

ROBERT L. JOHNSON,

        Defendant and Appellant.

FILED

DEC 22 1994

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Tenth Judicial District,
                In and for the County of Fergus,
                The Honorable Larry W. Moran, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

           Robert L. Johnson (Pro Se) and
           Monte Boettger, Attorneys at Law,
           Lewistown, Montana

       For Respondents:

           Torger S. Oaas, Attorney at Law,
           Lewistown, Montana


                Submitted on Briefs:  December 8, 1994

                        Decided:  December 22, 1994

Filed:

_____
        Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Plaintiffs Mark C. Eatinger, Beth Ann Henderson, and Julie Silvan filed a complaint in the District Court for the Tenth Judicial District in Fergus County in which Robert L. Johnson is named as the defendant. The plaintiffs alleged that they sustained damages as a result of Johnson's conversion of settlement proceeds which belonged to them. A jury returned a verdict in the plaintiffs favor and awarded $17,702.96 as damages. Johnson appeals from the judgment entered pursuant to the jury's verdict. We affirm the judgment of the District Court.

The issues on appeal are:

1. Did the District Court err when it denied Johnson's motion for summary judgment?

2. Did the District Court abuse its discretion when it refused to delay trial of the conversion claim until the Probate Court decided the amount of Johnson's fee?

3. Did the District Court err when it did not instruct the jury that an attorney has a right to retain possession of a client's money until he or she is paid for services rendered?

4. Did the District Court abuse its discretion when it refused to grant Johnson's motion for a directed verdict?

## FACTUAL BACKGROUND

In May of 1989, Ruth Eatinger died after she was hit by a pickup truck while crossing the street in Lewistown, Montana. She was survived by plaintiffs Mark C. Eatinger, Beth Ann Henderson,

and Julie Silvan. Mark Eatinger was named the personal representative of the estate.

The plaintiffs hired attorney Robert L. Johnson to probate Ruth's estate and to pursue wrongful death and survival claims against the driver of the vehicle that struck Ruth. There was no written fee agreement entered into by the parties.

The parties presented contradictory evidence of their agreement. The plaintiffs claim that they agreed to pay Johnson the statutorily determined fee for his probate services, but that he was not to be paid an additional amount for settling the tort claims. Johnson agrees that he was to receive the statutory fee for his probate work, but contends that Mrs. Eatinger's survivors agreed to pay him a percentage of the tort recovery.

Beth and Julie testified that they became dissatisfied with Johnson and sought advice from a different attorney whom they hired to pursue the tort claims. Testimony and evidence indicated that Mark phoned Johnson on January 17, 1990, to terminate his services. Johnson denied he was terminated at that time, but his letter to Mark, dated January 23, 1990, confirms a conversation on January 17, 1990, during which Mark informed him that the plaintiffs were retaining another attorney. Evidence indicated that by January 18, 1990, Johnson was offered $95,000 to settle the tort claims, and that he later received a draft for that amount which was made payable to the Estate of Ruth Eatinger, and to Johnson, as the attorney for the estate.

The plaintiffs were surprised when they discovered that Johnson received the settlement draft because they had hired another attorney to pursue the claims. Following this discovery, Beth hand-delivered a letter to Johnson instructing him not to cash the settlement draft, even though Mark had already endorsed it, because the plaintiffs' position was that he was no longer their attorney. By letter, dated January 31, 1990, Johnson responded that if he received the draft he would endorse it, cash it, and place the proceeds in a trust account.

Mark also called Johnson and requested that he not negotiate the settlement draft. Johnson again responded by letter dated February 1, 1990, and acknowledged Mark's preference that Johnson do nothing with the insurance money, but stated that he had put the money in a trust account.

On that same date, Johnson cashed the check, placed the proceeds in a trust account, and withdrew $2500 from the account and placed it in his general account. There was evidence that this money was used to pay his office expenses. Johnson testified that he withdrew this money to protect the Eatinger estate by paying its creditors. However, there was a separate estate account to pay creditors.

Bank records also indicate that on March 6 and 7, 1990, Johnson withdrew an additional $7000 to, at least in part, cover two checks he wrote to himself from his general office account. Without these withdrawals, bank records show that there would have been insufficient funds in Johnson's account to cover checks he had

written. Later records establish that Johnson withdrew $2,851.53 earned as interest on the amount remaining in the trust account.

The plaintiffs did not consent to Johnson's disposition of the settlement proceeds. In February 1990, they hired Tim O'Hare to represent them in the probate proceeding. O'Hare testified that he called Johnson and demanded the settlement money in February, but that Johnson refused to tender it. Johnson denied these conversations. O'Hare eventually received the funds, but Johnson asserted a lien on $10,000 to secure payment of his probate fee, and did not turn over the interest. Later, the Probate Court decided Johnson was entitled to $5000 as fees for probate services.

After plaintiffs hired yet another attorney to file suit against Johnson for conversion, Johnson petitioned the Probate Court to determine the remainder of his fee. The Probate Court deferred to the District Court as the proper forum for resolution of the conversion claim and the related attorney fee issue. The case was tried twice; both times a mistrial resulted. Before the third trial, Johnson moved for summary judgment and his motion was denied.

Johnson's testified that he believed he was entitled to a fee from the settlement proceeds. He claimed that he also had a right to assert control over additional money because he had an attorney's lien against the settlement to pay for his probate services. Johnson claims that the plaintiffs disputed the appropriate use of the settlement money and, perceiving a conflict, he decided to put the money in a trust account. He claims that he

5

then withdrew from the probate proceeding because he was also a creditor of the estate. The jury did not accept Johnson's defenses and rendered a verdict in favor of the plaintiffs. The jury also awarded plaintiffs compensatory damages, punitive damages, and costs.

## ISSUE 1

Did the District Court err when it denied Johnson's motion for summary judgment?

Our standard of review of a district court's summary judgment ruling is identical to the trial court's. *Cooper v. Sisters of Charity* (1994), 875 P.2d 352, 353, 51 St. Rep. 484, 485. We, therefore, review a summary judgment decision *denovo* and summary judgment is only proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P; *Spain-Morrow Ranch, Inc. v. West* (1994), 264 Mont. 441, 444, 872 P.2d 330, 331-32.

We have recognized that a claim for conversion must satisfy the following elements: ownership of property, a right of possession, unauthorized dominion over that property by another, and damages that result. *Lane v. Dunkle* (1988), 231 Mont. 365, 368, 753 P.2d 321, 323.

Johnson argues that the pleadings and supporting documents establish that he had a right to the money he retained, based on the parties' agreement and the fact that he settled the case pursuant to their request. He also contends that the plaintiffs

6

could not establish the elements of ownership and damage essential to a claim for conversion. We conclude that his arguments are without merit.

Ownership of proceeds from settlement of wrongful death or survival claims belongs to the heirs or the estate respectively. *Swanson v. Champion Intl. Corp.* (1982), 197 Mont. 509, 515-18, 646 P.2d 1166, 1169-71. The $95,000 settlement draft in this case was paid to settle claims against the insured driver in exchange for his release from claims for wrongful death and personal injury. The draft was made payable to the Eatinger estate, and to Robert Johnson as the attorney. However, plaintiffs offered evidence that there was no agreement to pay Johnson any fee from these proceeds. The plaintiffs claim that the money, therefore, belonged to them or the estate, not Robert Johnson. Likewise, the plaintiffs claim that they, not Johnson, are entitled to the interest that accrued on the settlement proceeds. See 45 Am. Jur. 2d *Interest and Usury* § 39 (1969). The plaintiffs introduced sufficient evidence in support of their claims to create a factual issue regarding ownership. Therefore, summary judgment for Johnson was correctly denied.

Second, Johnson argues that the Eatinger estate suffered no damage because it ultimately received the amount to which, in retrospect, it was entitled. The plaintiffs contend that the fact that Johnson withdrew funds without consent is sufficient to establish damages. We agree with the plaintiffs.

Johnson withdrew $9500 in February and March 1990, and interest in the amount of $2853.51 in October 1990.

Sections 27-1-201 and -202, MCA, provide that detriment is a loss suffered in person or property and that everyone who suffers detriment from another's wrongful acts is entitled to damages. Further, § 27-1-320, MCA, provides, in relevant part, that detriment caused by the wrongful conversion of personal property is presumed to be the value of the property at the time of conversion, plus interest from that time and a fair compensation for the time and money expended to pursue recovery of the property. Therefore, in conversion claims, damages are presumed once the other elements are established.

Johnson also claims that plaintiffs had no right to the settlement proceeds because they had not yet signed release agreements. However, this argument ignores the facts in this case. The check was made payable to Ruth Eatinger's estate. The heirs of the estate and its personal representative told Johnson not to cash the check. Nonetheless, Johnson cashed the check and deposited the proceeds in a trust account. He then withdrew money from that account. If an executed release was a prerequisite to use of the settlement proceeds, certainly Johnson was no more entitled to its use than the heirs. Furthermore, we have previously recognized that signing a release is not necessary where parties indicate an intent to settle a claim and the check endorsed states that it is for a full and final settlement. *See Boyer v. Ettelman* (1989), 235 Mont. 323, 327-28, 767 P.2d 324, 327.

The plaintiffs' intent was to settle their *claims* for 95 percent of the policy limits, which they understood was $95,000. That purpose was accomplished when the settlement draft was tendered and Mark Eatinger endorsed it. The draft stated that it was for a full and final settlement. The fact that a release was not signed until later is irrelevant to the facts of this case.

For these reasons, Johnson was not entitled to judgment as a matter of law, and the District Court did not err when it denied his motion for summary judgment.

## ISSUE 2

Did the District Court abuse its discretion when it refused to delay trial of the conversion claim until the Probate Court decided the amount of Johnson's fee?

Our standard of review of a district court order related to trial administration is whether the district court abused its discretion. *Montana Rail Link v. Byard* (1993), 260 Mont. 331, 337, 860 P.2d 121, 125. Johnson requested that the District Court stay proceedings in the conversion claim pending a final determination by the Probate Court regarding attorney fees.

The Probate Court had jurisdiction over and decided the amount of Johnson's fees for probate of the Eatinger estate. The Probate Court Judge testified at trial that that court did not have jurisdiction to decide the attorney fee related to the tort claim. In an order entered November 30, 1994, which we judicially notice, the Probate Court noted that Johnson himself previously argued that the Probate Court lacked jurisdiction over the tort claim fee

9

dispute. That court also decided that Johnson was estopped from asserting a contrary position in the probate proceedings. We conclude that the District Court did not abuse its discretion when it refused to stay proceedings in this case.

<u>ISSUE 3</u>

Did the District Court err when it did not instruct the jury that an attorney has a right to retain possession of a client's money until he or she is paid for services rendered?

On appeal, we review jury instructions as a whole and in light of the evidence presented at trial. *Pipe Indus. Ins. Fund v. Consolidated Pipe Trades Trust* (1988), 233 Mont. 162, 168, 760 P.2d 711, 715.

Johnson argues that the focal point of his defense was that he had asserted an attorney's retaining lien, and that even though the *only instruction* he offered related to *an* attorney's charging *lien* authorized by § 37-61-420, MCA, the District Court erred by giving the charging lien instruction instead of a retaining lien instruction.

Rule 51, M.R.Civ.P., states, in relevant part, that "[n]o party may assign as error the failure to instruct on any point of law unless that party offers an instruction thereon." We have held that a party is barred from challenging on appeal a court's refusal to give an instruction if the party fails to object to the instruction when it is given. *See State v. Smith* (1986), 220 Mont. 364, 381-82, 715 P.2d 1301, 1311. This rule is particularly appropriate

10

under these circumstances where the party challenging the instruction is the party who offered it.

When Johnson proposed the charging lien instruction, his counsel stated that he thought the language was broad enough to cover Johnson's defense. We will not allow Johnson to benefit from an alleged error he created. We conclude that the District Court did not abuse its discretion when it did not instruct the jury regarding an attorney's retaining lien.

### ISSUE 4

Did the District Court abuse its discretion when it refused to grant Johnson's motion for a directed verdict?

A motion for a directed verdict should be granted only if no evidence warrants submission to the jury, and all factual inferences are viewed in a light most favorable to the party opposing the motion. *Moralli v. Lake County* (1992), 255 Mont. 23, 27, 839 P.2d 1287, 1289. We affirm the District Court's denial of Johnson's motion for a directed verdict for the same reason we affirmed denial of his motion for summary judgment.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

11

Karla M. Gray

_____

_____
Justices