No. 95-415

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

ORLAN E. WOOD,

    Plaintiff and Appellant,

  v.

ROBERT L. DEN HERDER,

    Defendant and Respondent.

FILED

JUL 22 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    John M. Morrison, Meloy & Morrison, Helena, Montana

    For Respondent:

    Linda M. Deola, Reynolds, Motl and Sherwood, Helena, Montana

Submitted on Briefs:  February 29, 1996

Decided:  July 22, 1996

Filed:

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

Orlan Wood, Appellant, filed a complaint against Robert Den Herder, Respondent, in the First Judicial District Court, Lewis and Clark County, for breach of contract. Respondent filed a motion to dismiss which the District Court granted. Appellant appeals.

We reverse and remand.

Appellant raises the following issue:

Does an arbitration clause in a brokerage account agreement preempt a breach of contract action by the client against the broker on a subsequent promissory note that has nothing to do with the brokerage agreement and contains its own dispute resolution language?

## FACTS

The facts, as set forth in the complaint, are as follows: Appellant is a resident of Washington. In 1988, he retired from the Boeing Corporation with an investment IRA worth approximately $130,000. In early 1992, he decided to open an account with Respondent, an investment broker and resident of Lewis and Clark County, Montana.

Appellant sent Respondent $130,000 for the purpose of purchasing low-risk, income-producing investments that would provide for Appellant and his wife in their later years. After opening the account with Respondent, Appellant selected four front-load mutual funds and invested $90,000. The remaining $40,000 was placed in a money-market fund.

In March 1992, Respondent advised Appellant that $15,622 from his money-market fund had been invested in Performance Nutrition. Appellant told Respondent that he could not afford any risk, and Respondent assured him that there would be no loss.

In April 1992, without Appellant's consent, Respondent began to invest money from Appellant's account in the Remington Financial Group, Inc. Respondent continued to invest in this company through July 1992. The total investment in Remington reached approximately $23,437. After learning of the purchase of the Remington stock, Appellant contacted Respondent and, again, Respondent assured him both verbally and in writing that he would not incur any losses.

By September 1993, the value of the Performance Nutrition position had deteriorated to $2,872, and the value of the Remington position was listed as unavailable.

In October 1993, Respondent confessed to Appellant the loss of approximately $38,927 from his money market fund. According to the complaint, in consideration for Appellant's continued business and trust, and to avoid criminal and civil prosecution, Respondent signed a promissory note. The note promises Respondent will pay Appellant $38,927 plus interest and reasonable attorney fees and costs. The due date for final payment on the note was set for January 1, 1995.

Appellant filed this complaint for breach of contract in April 1995, after Respondent had failed to pay all or any portion of the obligation assumed in the promissory note. Appellant requested the following in damages:

(1) $38,927, plus interest at 12%, calculated from October 2, 1993; *
(2) Attorney's fees;
(3) costs;
(4) For any such other relief as [the] court may deem just and proper.

In response to Appellant's complaint, Respondent filed a motion to dismiss. In the brief supporting the motion, Respondent alleged that in April 1994, Appellant had filed a claim with the National Association of Securities Dealers, Inc. (NASD) Respondent argues that by filing that claim, Appellant had agreed to "submit the present matter in controversy" to NASD for arbitration.

Respondent attached a copy of the 1994 NASD arbitration agreement to his motion to.dismiss. According to the agreement, the named respondents include Terrence Murphy, Del Mar Securities, Cowles Sabol & co., Inc., and Respondent. The matter in controversy was then described by Appellant in a "Statement of the Claim," which requested the following relief:

(1) $40,000 returned for investments in high risk stock of Performance Nutrition and Remington Financial, (plus 12% interest beginning June 1992),
(2) $7,000 returned for Specialized Mobil Radio Station license in Reno, Nevada due to high risk. (plus 12% interest beginning January 1993),
(3) [This amount was paid by Schneider Securities, not a party to this action in order to avoid arbitration],
(4) $10,000 or, whatever is required for attorney and expert witness fees,
(5) $20,000 compensatory award for mental anguish of stress and worry created by these investments which had lead [sic] to depressed feelings, nervousness and an effect on my quality of life,
(6) Return of the NASD filing fee of $650.00.

4

Respondent contends that when Appellant agreed to submit his claim to arbitration, he agreed to submit <u>all</u> matters relating to his account, including the promissory note.

Respondent further argued that, in 1991, Appellant signed a brokerage-account agreement that containedarbitrationdisclosures. Respondent alleges that Appellant waived his right to proceed with an action in court when he signed that agreement.

The District Court granted Respondent's motion to dismiss in August 1995. In doing so, the court concluded that it was

> evident from the pleadings and briefs that both actions are based on the same investments and the same amount of money. To permit both actions would enable the Plaintiff [Appellant] to recover twice for the same loss.

Appellant appeals.

### DISCUSSION

On appeal, Appellant has framed the issue as to whether or not an arbitration clause in a brokerage-account agreement preempts a breach of contract action by the client against the broker on a subsequent promissory note that has nothing to do with the brokerage agreement and contains its own dispute resolution language. It is apparent, however, that the issue, as stated by Appellant, does not directly address the propriety of the District Court's dismissal of the action. We therefore restate the issue on appeal as whether the District Court erred in dismissing Appellant's complaint.

Respondent's motion to dismiss does not specify which of the enumerated defenses contained in Rule 12(b), M.R.Civ.P, he is

5

claiming as grounds for dismissal. Nevertheless, since none of the other defenses apply in this case, it appears that the motion was presented for failure to state a claim, under Rule 12(b)(6), M.R.Civ.P.

Ordinarily, we would review an appeal from a district court's order granting a motion to dismiss based on the sufficiency of the complaint. Busch v. Kammerer (1982), 200 Mont. 130, 132, 649 P.2d 1339, 1340 (citing Conley v. Gibson (1957), 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84). However, the court order concluded that it was evident from the "pleadings and briefs" that the promissory note and the arbitration actions were the same. In order to come to this conclusion, the District Court must have relied on allegations of arbitration found outside of the complaint. There is no mention in appellant's complaint of the arbitration agreement, and the agreement itself was submitted to the court attached to Respondent's brief. If a court considers matters outside of the pleadings on a Rule 12(b)(6) motion to dismiss, that motion is constructively converted into a motion for summary judgment. See Rule 12(b), M.R.Civ.P.

This Court reviews a district court's grant of summary judgment decision de novo, and summary judgment is only proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.; Eatinger v. Johnson (1994), 269 Mont. 99, 887 P.2d 231.

The facts, as alleged by the Appellant, are that Respondent signed a promissory note in 1993 in consideration for Appellant's

continued business and trust, and to avoid criminal and/or civil prosecution.   This promissory note came due in January 1995, and Respondent has failed to pay any portion of the assumed obligation.

On appeal, Respondent-does not contest the validity of the promissory note.   Instead, he argues that the 1994 agreement to arbitrate necessarily includes any claim for breach of contract on the promissory note.   Therefore, Respondent asserts that it would be inappropriate to allow Appellant to file the "same action" in two separate forums.

We do not agree.   The arbitration claim is expressly based upon allegations that Respondent ignored the Appellant's investment objectives and misled him while acting as his security broker.  The arbitration claim requests  the return of the money given to Respondent for investment  and for attorney fees and experts required in the securities arbitration and $20,000 for mental anguish, stress and worry.   He also requests the return of the NASD filing fee.

The action before us is not here on the arbitration claim but rather is based on a promissory note.   Respondent agreed to pay Appellant a certain amount of money with interest and costs in an action  to recover on the note.   The complaint alleges  the promissory note was a contract between the parties.   These allegations were not controverted by Respondent.  In his complaint, Appellant seeks the amounts that were expressly assumed by the Respondent on the promissory note.

The note has nothing to do with whether Respondent or anyone else committed any improprieties prior to the execution of the promissory note which is a matter to be dealt with in the arbitration case. The brokerage agreement was signed July 18, 1991, and the promissory note was signed October 2, 1993, more than two years after the brokerage account agreement.

Therefore, the arbitration matter in Washington state and the breach of contract on the promissory note in Montana are separate and distinct actions. As Appellant claims, the promissory note case here is a simple contract action which turns upon the question of whether the October 2, 1993 promissory note is an enforceable contract.

Accordingly, we conclude that, as the moving party, Respondent was not entitled to dismissal as a matter of law pursuant to Rule 56(c), M.R.Civ.P. To the extent that any damages awarded in the Montana contract action and in the Washington arbitration matter are duplicative, double recovery can be avoided through an offset.

We take this opportunity to again remind the District Court that prior to converting a motion to dismiss into a motion for summary judgment, it is incumbent upon the District Court to notify the parties of the court's intent. Rule 12(b), M.R.Civ.P. This step is imperative to guarantee that the non-moving party appreciates the consequences of the conversion. After notifying the parties, the non-moving party has the option of coming forward with affidavits to show that there are genuine issues for trial.

Gebhardt v. D.A. Davidson & Co. (1983), 203 Mont. 384, 391, 661 P.2d 855, 858.

Here, the District Court did not notify the parties of its intent to convert the motion to dismiss into a motion for summary judgment. Consequently, the appropriate procedures for a judgment for dismissal were not followed for either Rule 12(b)(6) or Rule 56, M.R.Civ.P.

Summary judgment was not appropriate in this case because the Respondent was not entitled to the ruling as a matter of law. We reverse and remand for proceedings consistent with this opinion.

Reversed and remanded.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

9