No. 81-58

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

GEORGE W. BERRY,

Plaintiff and Respondent,

vs.

CLAYTON M. ROMAIN and
RAYMOND C. ROMAIN,

Defendants and Appellants.

Appeal from:   Distrist Court of the Eleventh Judicial District,
               In and for the County of Flathead.
               Honorable Robert Sykes, Judge presiding.

Counsel of Record:

    For Appellants:

        Keller and Gilmer, Kalispell, Montana

    For Respondent:

        Datsopoulos, MacDonald and Lind, Missoula, Montana

Submitted on briefs: July 2, 1981

Decided:  AUG 21 1981

Filed:  AUG 21 1981

*Thomas J. Kearney*

_____
                    Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This action was brought in the District Court of the Eleventh Judicial District of the State of Montana, County of Flathead, to rescind a contract for the purchase of real property in Flathead County. The defendant-appellants counterclaimed for a breach of contract for nonpayment by the plaintiff-respondent. The matter was tried before the court, and findings of fact and conclusions of law and judgment were entered for plaintiff-respondent in the amount of $49,385.36. Thereafter, appellants' motions for amendment of the findings, conclusions and judgment and for a new trial were filed. The court entered an order amending various findings and making additional findings and conclusions and an amended judgment in favor of respondent for rescission along with a judgment for $46,218.10 plus interest from the date of the original judgment.

The issues before this Court, as set forth in the appellants' brief, were six in number but can be properly handled and discussed by this Court as follows:

1. Whether the judgment of the trial court for rescission is supported by substantial credible evidence.

2. Whether the rescission of the contract by reason of mutual mistake was a proper remedy to be applied by the court.

3. Whether the court properly awarded damages under the circumstances of this case.

Appellants, the Romains, purchased a tract of land located in Flathead County near Bigfork, Montana, from Wesley House. The irregularly-shaped tract is bounded on the west by Montana Highway 35 and on the south and east by

a county road. In the spring of 1978, they contracted with House to build a two-story commercial building on the south part of the property, intending to rent the space as offices. They hired House, from whom they were purchasing the land, to construct the building. When construction began, the building was intended for appellants' use and, as previously noted, for rental property.

During the latter part of June or early part of July 1978, respondent Berry, the owner of the Bigfork Convalescence Center, a nursing home, along with the local dentist and a doctor who was considering moving into the area, met with appellants to see if they could purchase the building. They contemplated creating a medical center, with the doctor and dentist upstairs and respondent occupying the downstairs area. Following the meeting respondent met with a local attorney, Lee Simmons, and discussed with him the possibility of subjecting the building to a condominium ownership.

At the time respondent contacted Clay Romain, one of the appellants herein, the building was approximately 50 percent completed. Respondent and appellants met several times regarding the possibility of a sale. After essentially agreeing to the terms of the sale, if one were to occur, at the suggestion of respondent they met with attorney Simmons.

Simmons, in the conference with appellants and respondent, noted that appellants had not held the property long enough to qualify for a long-term capital gain. He suggested that, as a business tax matter, an option be used with a sufficient down payment followed by a contract for deed as a method for transferring the property. At that

-3-

time the stage of construction of the building was such that either appellants would continue with their plans to finish and lease it as office space, or respondent, who had different plans, would have to make changes consistent with his plans.

The parties agreed to proceed with the option followed by a contract for deed, to be prepared by Simmons, with $40,000 as consideration for the option, and a total purchase price of $300,000. In view of the fact that at the time there was no survey of the property and that the sale was for less than the entire parcel, Simmons advised the parties that a survey would be required for recording purposes, and the building contractor, at appellants' request, contracted with a local surveyor to do the job. There is a factual dispute about what description was annexed to the option which was exercised August 23, 1978.

The option provided for its exercise by October 15, 1978, and a contract for deed was signed by the parties at approximately that time. While the contract was prepared and signed to convey the property pursuant to the parties' agreement, the option to purchase, the deeds and the notices of respondent's purchase interest associated with the contract were not completed because no legal description was available to attach as an exhibit to those documents. Consequently, the contract was held by attorney Simmons until the transaction could be completed by obtaining the proper survey. In view of the fact that problems arose in the survey, the documents remained in the possession of the attorney until they were released to the parties for the filing of this action. No escrow was ever formally con-

-4-

cluded and no documents were ever filed with the clerk and recorder of Flathead County.

The contract provided for quarterly payments of $6,827.60, first due on November 15, 1978. The contract required the sellers to furnish the purchasers a title policy in the amount of the contract showing good merchantable title to be vested in the sellers in fee simple. In addition, the land was to be transferred by a warranty deed upon payment of the purchase price in full. The contract contained special provisions for submitting the property to a condominium ownership and for the sellers' agreement to remove or reface an existing building on the remaining property within two years. The contract also provided the following as to paving and parking: "The sellers hereby covenant to pave the parking area on the south and north sides of the building on these premises at no additional cost to the purchaser by August 1, 1979."

Although the survey had not been received by November 15, 1978, respondent made the first quarterly payment of $6,827.60 to his attorney. In accordance with the closing statement prepared by him, the attorney paid $5,911.60 of that amount to appellants.

Sometime in December 1978 or early January 1979, respondent contacted the surveyor at his home requesting to see the survey and at that time was told there were encroachments upon the State of Montana and Flathead County right-of-ways. The survey showed that a part of the eaves on the southeast corner of the building and a brick facing on the east corner of the front southern entrance encroached upon county right-of-way. It also showed an encroachment of

-5-

a portion of the eaves of the building onto the state highway right-of-way on the northwest corner of the building.

After speaking with the surveyor, respondent contacted his attorney and met with him to discuss the survey. Within the next few weeks the situation between the parties deteriorated. On January 24, 1979, respondent, with a new attorney, sent appellants a notice of intent to rescind the contract, demanding a correction of the various breaches of the contract within ten days and demanding payment of $50,126.86.

On January 25, 1979, appellants obtained an easement for the encroachments in the parking involved in the County of Flathead's right-of-way. In addition, appellants' counsel responded to the notice of the intention to rescind, requesting a detailed statement of the items of concern.

On February 11, 1979, appellants gave respondent a notice of default under the contract for failure to make the second quarterly payment. On February 21, 1979, respondent's counsel gave written notice of rescission, tendering restoration of the title documents previously received by him on the condition that appellants repay all monies expended together with interest. This action was thereafter commenced on March 30, 1979.

The first issue for consideration is whether the judgment of the trial court for the rescission is supported by substantial, credible evidence.

The statutory grounds for establishing a case in rescission are set forth in sections 28-2-1701 et seq., MCA. A party to a contract may rescind the same only under the following conditions:

"(1) if the consent of the party rescinding . . . was given by mistake or obtained through duress, menace, fraud, or undue influence . . .;

"(2) if, through the fault of the party as to whom he rescinds, the consideration for his obligation fails in whole or in part;

"(3) if such consideration becomes entirely void from any cause;

"(4) if such consideration, before it is rendered to him, fails in a material respect from any cause; or

"(5) if all the other parties consent." Section 28-2-1711, MCA.

Section 28-2-1713, MCA, sets forth the specific requirements to be followed in rescission cases. The rescinding party must use reasonable diligence and take action within a reasonable time upon discovering the facts which entitle him to rescind. Here, appellants do not question the fact that respondent took prompt and speedy action in filing his case. The sole question in this issue is whether it is a proper case for rescission.

The trial court was urged to rescind the contract for mutual mistake with regard to the description of the parcel of property to be conveyed, for failure of consideration, in whole or in part, because of appellants' breach in failing to furnish title insurance to respondent showing good and merchantable title to the property, free and clear of all liens and encumbrances; for failure of consideration, in whole or in part and in a material respect, for appellants' failure to provide deeded property on the south side of the building enabling respondent to own a parking lot; and last, for actual and constructive fraud in appellants' failure to advise respondent of known encumbrances on title to the property. The trial court in its findings of fact bearing

on respondent's right to rescission found:

> "7. Prior to the purchase of the property by plaintiff, plaintiff and defendants had viewed the property, the building, and agreed as part of the contract that parking would be provided on the south and north sides of the building and paid by defendants.

> "8. . . . [The surveyor] discovered that county right-of-way runs immediately to the south of the building and a portion of the building encroaches on such right-of-way. The survey further disclosed that a portion of the eaves of the building encroached on state highway right-of-way on the west side of the property. Neither party was aware of the encroachments of the county right-of-way and state easement prior to the completion of the survey.

> "9. [As amended] An easement had been obtained in regard to the county right-of-way at all times. The Montana Highway Department will not make any agreements in any way affecting encroachment in the west side of the building."

Following these findings the court made its conclusions of law which bear directly on the issue of rescission:

> "1. The agreement as to parking on the south and west sides of the building was part and parcel of the contract and agreement of the parties.

> "2. Both parties were at all times acting in good faith and by reason of mistake and not by fraud."

Thus, the court concluded that respondent was entitled to rescission, and the court, contrary to the arguments of appellants, addressed the issue of materiality of mutual mistake of the parties. We find implicit in the trial court's determination contained in its conclusions of law the ruling that a mutual mistake of fact occurred in this case with regard to the parking.

Both parties agreed that a part of the contract was that parking would be available. It was uncontradicted that respondent, as purchaser, required a deeded parking lot to

go with the building, whether it was to be leased or developed into condominium units. Parking was a major consideration, as shown by the original letter of rescission on January 4, 1979. We find that the court acted well within its discretion as a court of equity in determining that parking was a material part of the contract; that a mistake with regard to parking was an adequate basis for rescission under section 28-2-1711, MCA; and that the consideration for respondent's contract had failed in a material aspect as well. Regardless of appellants' argument that a substitute parking easement had been obtained for the south entrance, which is a crucial issue to a commercial developer and to a proposed tenant, we find the court was well within its discretion in determining that the mistake and failure of consideration associated with the parking problem was sufficient grounds for rescission of the contract.

Appellants argue that the easement they have obtained for the parking was a sufficient substitute here to prevent a rescission of the contract. However, such an easement did not comply sufficiently with the practical realities of commercial property ownership to satisfy the trial court that the parking issue was not material. At the trial appellants advanced this position, and it was rejected by the court—a grant of easement is simply not ownership. Appellants had contracted to provide a fee simple title free and clear of all liens and encumbrances and were unable to perform this contract. The trial court was in the best position to determine the question of the right to the remedy of rescission, and adequate legal authority supports

its decision. See Bolinger v. City of Bozeman (1972), 158 Mont. 507, 511, 493 P.2d 1062, 1064; Ryan v. Board of County Commissioners (1980), ____ Mont. ____, 620 P.2d 1203, 1209, 37 St.Rep. 1965, 1972.

The next issue is whether the rescission of the contract by reason of mutual mistake was a proper remedy. Appellants argue that the conclusions of law made by the trial court are inconsistent with its findings of fact. In particular, appellants urge that the trial court "found that the encroachment problems on the south side of the building were remedied by [appellants] obtaining an easement from the county . . ." However, as we indicated above, although it is true that appellants obtained an easement, the court at no time found or determined that such an easement "remedied" the parking situation. In fact, the court found exactly the opposite. Since no deeded parking could be obtained on the south side of the building, there was a material mutual mistake of fact and a material failure of consideration justifying the rescission.

Respondent does not have the burden of establishing the proof of the facts because the trial court has already found them, and this Court can draw every legitimate inference to support the presumption of correctness of the trial court. Rule 52, M.R.Civ.P.; Poulsen v. Treasure State Industries (1981), ____ Mont. ____, 626 P.2d 822, 827, 38 St.Rep. 218, 223.

We adhere to the doctrine of implied findings where, as here, the trial court's findings are general in terms. Any findings not specifically made but necessary to the judgment are deemed to have been implied if supported by the

-10-

evidence. See _Poulsen_, supra. As long as the implied findings are not inconsistent with the express findings, this Court will not overturn the trial court result. Here, the finding that the mistake referred to in the conclusions was a material mistake and the further finding that a lack of deeded parking space supports a material failure of consideration are sufficient implied findings to support the court's conclusion that a rescission should be granted under section 28-2-1711, MCA.

The third issue for consideration is whether the court properly awarded damages under the circumstances of this case. Appellants raise the issue of damages as credit for fair rental value paid for the property during respondent's period of control of the premises. This issue is one which was addressed at trial and considered by the court in a motion to amend the findings of fact and conclusions of law. After hearing arguments and reviewing the briefs, the trial court did in fact partially amend those findings and conclusions. The court added findings concerning attorney fees, fire insurance, utilities and carpeting damages but declined to make any further additions.

The trial court impliedly held that the provisions of section 28-2-1715, MCA, were met when it adjudged the rescission, allowing an offset in the original findings and conclusions and further offsets in the amendments in its October 22, 1980, order. However, in view of the fact that respondent never obtained actual possession of the property because construction was not completed, a rental offset was not found to be proper and was refused. In addition, the property could not have been occupied or rented, not only

-11-

because of the lack of parking but also because it was not hooked up to the Bigfork sewer system.

Affirmed.

_____
                        Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices