No. 90-596

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

THOMAS W. LIDDLE AND CONSTANCE L. LIDDLE,

Plaintiffs and Respondents,

-vs-

JACK H. PETTY, ET AL.,

Defendant and Appellant

FILED

AUG 20 1991

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Leif B. Erickson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Marshall Murray and James M. Ramlow; Murray &
Kaufman, Kalispell, Montana.

For Respondent:

Chris Christensen, Attorney at Law, Kalispell,
Montana.

Submitted on Briefs: July 11, 1991

Decided: August 20, 1991

Filed:

_____

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Jack H. Petty appeals from a July 23, 1990, judgment of the District Court of the Eleventh Judicial District, Flathead County, Montana, awarding damages to Thomas W. and Constance L. Liddle for breach of a contract for deed. We affirm.

The issue is whether the District Court erred by holding that the vendee, Jack Petty, rather than the vendors, Thomas and Constance Liddle, had materially breached the contract for deed and that Petty was not entitled to suspend payments.

I

In 1981 Thomas and Constance Liddle purchased a small farm located in Flathead County on Highway 2 across from the water slides. At the time of purchase, the Federal Land Bank of Spokane held a mortgage on the property, and Liddles assumed liability for the promissory note secured by the mortgage.

In February of 1985, Liddles sold the real property to Jack Petty under a contract for deed for $498,000. Petty agreed to pay $80,000 in cash at the time of closing, to assume the obligation to the Federal Land Bank of approximately $248,000, and to compensate Liddles for the $170,000 balance plus interest in five annual payments beginning January 1, 1987.

According to the terms of the contract, when Liddles received the $80,000 down payment, they would convey to Petty a twenty-five acre parcel of land released from the Federal Land Bank mortgage for development of a recreational vehicle park:

> 18. Release of Acreage. Seller hereby agrees that, upon payment of the down payment referenced in Paragraph 1(a) above, it will release unto Purchaser that certain portion of real property being conveyed hereunder (in the approximate size of 25 acres), which parcel is specifically described on Exhibit B attached hereto, and will thereafter cooperate with Purchaser in obtaining a release of said property from the Federal Land Bank mortgage referenced in Paragraph 1 (b) above.

Although Petty made the $80,000 down payment, the twenty-five acre tract was not conveyed to him at that time because the tract had not been surveyed. The twenty-five acre parcel was surveyed and the Certificate of Survey was recorded on February 21, 1985. Because the survey was incorrect, a corrected Certificate of Survey was recorded on May 20, 1987.

Additional consideration for the release of the twenty-five acre parcel was the assignment of a security interest in Petty's retirement fund:

> 19. Additional Collateral. As additional collateral and as additional consideration for the release of the 25-acre parcel just mentioned in the prior paragraph, Purchaser hereby grants to Seller an assignment of and security interest in and to this vested interest in Western Airlines, Pilots' Retirement Income Plan, Certificate Number 3158. . . .

The parties later learned that terms of the merger of Western Airlines and Delta Airlines prevented Petty from assigning an interest in his retirement fund.

In his testimony, Petty also claimed that at the time he entered into the contract, he had been assured that the property was unzoned. In relation to zoning, the contract provided:

> 20. Potential Reduction of Price. The parties hereto acknowledge that Purchaser intends to use the 25-acre parcel being released . . . as a recreational vehicle park. The entire property being conveyed

3

hereunder is being sold at $498,000.00 under the assumption that Purchaser can acquire the necessary zoning approval for a recreational vehicle park on said released property. . . . However, if, after use of due diligence and the expiration of 30 months subsequent to the execution of this Agreement, Purchaser fails to obtain said zoning approval, then, in such case, the purchase price of $498,000 shall be reduced by $25,000.00 . . . .

The title insurance failed to reflect the fact that the property was zoned at the time of sale. Petty was unable to obtain rezoning of the property allowing him to construct an RV park.

The Contract for Deed provided that if Petty failed to make any of the payments or failed to comply with any other provision of the contract, Liddles had to give notice to Petty of default. If Petty failed to cure the default within 30 days of receiving notice, Liddles were required to give 30 days further notice. If Petty could not meet the required payments within 30 days of the second notice, the entire unpaid balance on the contract, including principal and interest, became due.

Federal Land Bank notified Petty in September, 1985, that it would not release the twenty-five acre parcel to Petty until he brought loan payments current. Petty ceased making payments altogether in early 1986. On May 27, 1987, Liddles sent Petty a notice of default alleging that Petty was $27,944.40 in arrears on the Federal Land Bank mortgage lien, $32,043.84 in arrears on the payments of interest to Liddles, and had not provided a certified copy of the fire insurance policy as required by the Contract for Deed. The notice asked that Petty cure the default.

On June 18, 1987, Petty sent an instruction to the escrow

4

agent not to close the escrow or to release documents to Liddles pending further instruction or court order.

Liddles sent a second notice of default on July 13, 1987, accelerating the entire balance due under the Contract for Deed in the amount of $170,000. Liddles also requested attorney's fees as allowed by the Contract for Deed. On December 17, 1987, Liddles filed this action to enforce their rights under the Contract for Deed. Defendant counterclaimed, alleging that he was entitled to rescission and return of his payments on the ground of misrepresentation by Liddles.

After the action was filed, Farm Credit Bank of Spokane, successor to Federal Land Bank, foreclosed on the property. On March 12, 1990, the District Court ruled that the bank was entitled to a deficiency judgment against Petty and Liddles.

A hearing on this case was held June 4, 1990, before the District Court sitting without a jury. Mr. Liddle testified that at the time of closing he was under the impression that all necessary documents for the transfer of the twenty-five acre tract had been signed and turned over to Petty. According to Mr. Liddle, the first time that he became aware that Petty had not received the deed to the twenty-five acre parcel was in December 1987. Prior to that date, Petty had not contacted Liddles directly to say that he needed the deed to the twenty-five acre parcel. Mr. Liddle testified that he returned the signed deed to the American Abstract and Title Company in December 1987.

Petty testified that he had not ever received the deed for the

5

twenty-five acre tract and that release of the twenty-five acre tract was "paramount to the deal." Petty's testimony contradicted his answer to interrogatories in which he stated that the deed to the twenty-five acre parcel was delivered after the defaults were claimed. Russell E. Harshberger of American Abstract and Title Company denied receiving in the mail the deed to the twenty-five acre parcel which he had sent to Liddles in November 1987.

The District Court found in favor of plaintiffs, deducting $25,000 from the balance of the purchase price owed to Liddles as provided in the Contract for Deed since Petty was unable to obtain rezoning of the property. From this judgment, Petty appeals.

## II

The issue is whether the District Court erred by holding that Petty, rather than Liddles, had materially breached the contract for deed and that Petty was not entitled to discontinue payments. According to Petty, he was entitled to suspend payments because Liddles had materially breached the contract by failing to convey the deed to the twenty-five acre parcel to him at the time Liddles received the $80,000 down payment as provided in the Contract for Deed. Petty claimed that release of the twenty-five acre parcel was "paramount" to the deal.

Unless the contract provides otherwise, the general rule is that the vendor need not produce marketable title to real property sold under an installment contract until the date set for final payment and tender of the deed. Wise v. Sebena (Mont. 1991), 808 P.2d 494, 498, 48 St.Rep. 309, 311; Scheitlin v. R. & D. Minerals

(1985), 217 Mont. 8, 11, 701 P.2d 1388, 1390. If one of the contracting parties materially breaches the contract, the injured party is entitled to suspend his performance. Determination of whether the breach is material is a question of fact. Sjoberg v. Kravik (1988), 233 Mont. 33, 38, 759 P.2d 966, 969.

A party to a contract may rescind "if, through the fault of the party as to whom he rescinds, the consideration for his obligation fails in whole or part." Section 28-2-1711, MCA. In addition, the party must meet the requirements of § 28-2-1713, MCA, which provides in part:

> Rescission, when not effected by consent, can be accomplished only by the use on the part of the party rescinding of reasonable diligence to comply with the following rules:
>
> (1) He must rescind promptly upon discovering the facts which entitle him to rescind if he is free from duress, menace, undue influence, or disability and is aware of his right to rescind.

Section 28-2-1713(1), MCA. Therefore, even though a party may be entitled to rescind a contract, the "rescinding party must use reasonable diligence and take action within a reasonable time upon discovering the facts which entitle him to rescind." Berry v. Romain (Mont. 1981), 632 P.2d 1127, 1130.

Petty argues that this case is analogous to Sjoberg where the real estate contract provided for release of an underlying mortgage. In Sjoberg, we upheld the district court's decision that procuring a release of the underlying mortgage was material to the contract. Sjoberg, 233 Mont. at 39, 759 P.2d at 969. In contrast to this case, the buyer in Sjoberg promptly notified the seller

7

that he was in default for failing to acquire a release of the underlying mortgage, and the buyer attempted to make payment with the provision that it be held in escrow. The escrow agent rejected the payment. When the seller responded by notifying the buyer that he was in default for past-due payments, the buyer promptly made the payments within the grace period. Sjoberg, 233 Mont. at 35-37, 759 P.2d at 967-68. In addition, we upheld the district court's decision that once the release was obtained the buyer was obligated to recommence payments. Sjoberg, 233 Mont. at 39, 759 P.2d at 969.

The District Court found that Petty had not made any payments to Liddles since February 11, 1985, when Petty had made the down payment. Petty suspended payments to the Federal Land Bank in January 1986. The District Court found that Petty had not requested a deed to the twenty-five acre parcel until May 1987 and had given no notice of default to Liddles as a result of their alleged failure to furnish a release. In addition, as the District Court found, Petty "had a great deal of difficulty in getting the 25-acre parcel released by the Federal Land Bank due to the fact that he was in default on the mortgage payments within seven (7) months after having assumed the mortgage obligation." In the opinion of the District Court, Petty's problem was not the lack of a deed to the twenty-five acre parcel, but the inability to obtain rezoning of the twenty-five acre parcel to allow operation of an RV park.

On the other hand, the District Court found that Liddles had

8

"performed in accordance with all the terms and conditions of the Contract for Deed" and had "delivered a deed to the acreage in a timely fashion after being presented with one by Defendant through Mr. Harshberger."

Petty was not entitled to suspend performance of the contract when the failure of consideration was not through the fault of the other party and when Petty had failed to use "reasonable diligence" to "rescind promptly upon discovering the facts." Unlike the buyer in Sjoberg, Petty delayed over two years after the contract was signed to report to Liddles that he had not received the deed to the twenty-five parcel and had never given Liddles notice of default.

This Court cannot set aside findings of fact determined by a district court sitting without a jury, unless the findings are "clearly erroneous," and we must give "due regard" to the "opportunity of the trial court to judge of the credibility of the witnesses." Rule 52(a), M.R.Civ.P.; Steer, Inc. v. Department of Revenue (Mont. 1990), 803 P.2d 601, 603, 47 St.Rep. 2199, 2200. When evidence conflicts, we will not substitute our judgment for that of the District Court if the findings are supported by substantial, credible evidence. Lorenz v. Estate of Schilling (1989), 236 Mont. 82, 84, 768 P.2d 869, 870.

Substantial evidence supports the findings of the District Court that the lack of a release of the twenty-five acre tract from the Federal Land Bank is attributable to actions of Petty, rather than Liddles. Even if receipt of the release or deed to the

twenty-five acre parcel were material, Liddles were not accountable for the failure to obtain the release.

When the purchase price of property under a contract for deed is paid in installments, "default in the payment of any installment is a distinct breach and gives the vendor the right to declare a forfeiture." Wise, 808 P.2d at 498, 48 St.Rep. at 311 (quoting Suburban Homes Co. v. North (1914), 50 Mont. 108, 145 P.2d 5). The conclusion of the District Court that Petty "breached the terms and conditions of the Contract for Deed without justification," was not clearly erroneous and was supported by substantial, credible evidence.

Affirmed.

_____
Justice

We concur:

_____
_____
_____
_____
Justices

10