No. 99-024

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 4

297 Mont. 473

994 P.2d 25

E. EARL NORWOOD,

Plaintiff and Appellant,

v.

SERVICE DISTRIBUTING, INC.,

a Montana corporation, ULTRAFOODS, INC.,

a dissolved Montana corporation, STEVEN E. BUCKNER,

ANN E. BUCKNER, EDWARD BUCKNER and

JEANNE T. BUCKNER,

Defendants and Respondents.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

James M. Ragain, Ragain Law Firm, Billings, Montana

For Respondent:

James M. Kommers, Kommers, Steele & Bentson, Bozeman, Montana

_____

Submitted on Briefs: May 27, 1999

Decided: January 6, 2000

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1.E. Earl Norwood (Norwood) appeals the judgment of the Thirteenth Judicial District Court, Yellowstone County. On November 6, 1998, the District Court issued its Findings of Fact, Conclusions of Law and Order in favor of the defendants, Service Distributing, Inc., (SDI), Ultrafoods, Inc., (Ultrafoods) and Steven E. Buckner, Ann E. Buckner, Edward Buckner, and Jeanne T. Buckner (Buckner).

¶2.We affirm in part, reverse in part, and remand.

¶3.On appeal, Norwood raises the following issues:

1. Did the District Court err in adopting findings of fact, which were essential to SDI's burden of proof, even though no evidence was offered to support those findings?

2. Did the District Court err by finding a failure of consideration where the uncontroverted evidence established that SDI waived its right to claim failure of consideration?

3. Should this matter be remanded with instructions to enter judgment for Norwood when the trial court record established that SDI did not meet the burden of proof on its alleged defense?

## Factual and Procedural Background

¶4. This dispute can be traced back to May of 1993, when Steven Buckner, on behalf of SDI, began negotiating with E. Earl Norwood[1] for acquisition of Norwood's businesses, Kay's Novelties, Inc., and Norwood & Associates, Inc., (previously Ultrafoods). Kay's Novelties, Inc., held distributorships for Dreyer's and Dove ice cream products, and Norwood & Associates, Inc., held the distributorship for Haagen-Dazs ice cream products. The undisputed facts show that both businesses--which covered distribution in much of Montana and Wyoming--had been profitable for Norwood, who in 1993 wished to retire.

¶5. At the time, the Buckners desired to increase the product line of SDI, a wholesale food distributor in Bozeman, Montana, by acquisition of the rights to distribute these premium brands of ice cream. Steven Buckner, along with family members Ann, Edward and Jeanne, were shareholders in SDI. Both parties were represented by counsel during negotiations.

¶6. Because Norwood had set up the ice cream distributorships with two separate businesses, the Buckners created Ultrafoods, Inc., (which is the same name of a company once owned by Norwood). Accordingly, SDI purchased the Dreyer's and Dove distributorships from Kay's Novelties, Inc., and Ultrafoods purchased the Haagen-Dazs distributorship from Norwood & Associates, Inc. Following acquisition, the three distributorships were consolidated under SDI, and Ultrafoods was dissolved. The Dove and Haagen-Dazs distributorships are not in dispute here.

¶7. The parties agreed to a total purchase price of $575,000. The transaction would include not only the "distributorship rights," but other business assets as well, including delivery vehicles, office equipment, accounts receivable, and inventory. A purchase and sale agreement, dated September 13, 1993, was executed to transfer the Dreyer's and Dove distributorships along with the other assets of Kay's Novelties, Inc., to SDI. The purchase price, $125,000, was paid at closing on October 15, 1993. Another purchase and sale

agreement, also dated September 13, 1993, was executed to transfer the Haagen-Dazs distributorship along with the other assets of Norwood & Associates, Inc., to Ultrafoods. The purchase price for this second agreement, $250,000, was likewise paid at closing.

¶8.On October 1, 1993, SDI and Norwood entered into another agreement for "consulting services" because the Buckners were unable to borrow enough money to pay the entire purchase price. The consulting agreement allowed Norwood to finance the remaining $200,000 of the $575,000 purchase price. In exchange for SDI's payment of 48 equal monthly payments of $4,166.67 to Norwood, commencing October 31, 1993, and concluding on September 30, 1997, Norwood agreed to act "as an independent business consultant and advisor to SDI." The consulting agreement was personally guaranteed by all of the Buckners.

¶9.Of critical relevance are the following provisions found in the Kay's Novelties, Inc. purchase and sale agreement with SDI:

1. Seller agrees to sell, transfer, assign and deliver to Purchaser . . . . All of Seller's right, title and interest in and to the Dreyers and Dove distributorships.

6.1 Seller is the owner of the Assets and the business being purchased pursuant to this Agreement and has the authority to enter into this Agreement and all agreements and documents contemplated hereby, to consummate the transactions contemplated hereby, and to perform the obligations to be performed by them hereunder and under all agreements and documents contemplated hereby.

It is undisputed, however, that assignment of the written distributor agreement between Dreyer's and Kay's Novelties, Inc., which SDI claims it should have received upon closing, could not be assigned "without the prior written consent of Dreyer's." SDI alleges that Norwood did not obtain this written consent, and thereby did not assign the agreement as contemplated by the buy-sell agreement. Section three of the purchase and sale agreement states that "Purchaser shall be entitled to possession of the Assets immediately upon closing." Section eight states that "The transfer of all of the Assets shall be effectuated and confirmed at closing by such bills of sale, assignments or other instruments of transfer as shall be appropriate to carry out the intent of this Agreement and shall be sufficient to vest in Purchaser all right, title and interest of Seller is [sic] such Assets, free and clear of any and all liens, security interest, charges or encumbrances whatsoever." A pre-closing condition required SDI to "have been approved by the relevant

authorized representatives or officers of Dreyers . . . for the transfer of the Distributorship of Purchaser." The agreement also includes an integration clause that states that the agreement was the entire agreement of the parties and "supersedes any and all prior agreements or understandings, written or oral."

¶10.Nevertheless, Norwood contends that at closing, when the assets were "effectuated and confirmed," SDI understood it would not receive the Dreyer's distributor agreement by assignment on closing; rather, SDI would have to negotiate its own agreement with Dreyer's. There is no evidence that SDI objected at closing to the omission of Norwood's assignment of the Dreyer's distributor agreement. Furthermore, according to Norwood's testimony at trial, he personally arranged for meetings between the Buckners and Dreyer's representatives prior to the sale's closing date. According to District Court findings, Dreyer's did not express any objections to the proposed transfer between Norwood and SDI.

¶11.Additionally, Norwood claims that the Dreyer's distributor agreement provided absolutely no guarantee of distribution rights to its holder and therefore was of little or no value. The $125,000 purchase price for the Dryer's and Dove distributorships, in fact, was expressly allocated between "Equipment" at $43,000 and "Inventory" at $82,000. Further, the agreement, which SDI had the opportunity to review three months prior to closing, included the following conditions in addition to the assignment provision: 1) it was not an exclusive agreement, i.e., Dreyer's reserved the right to sell to anyone including other distributors within the described territory; 2) either party could terminate by giving 30 days written notice; 3) if Dreyer's found the distributor was not complying with the terms of the agreement it could cancel without notice; 4) Dreyer's was under no obligation to extend the agreement; 5) Dreyer's had the discretion to unilaterally raise the distributor's purchase price at any time; 6) Dreyer's could reject a distributor's order in whole or in part at any time.

¶12.It is undisputed that from the closing date, October 15, 1993, up to the time that Norwood filed suit in May of 1997, SDI did not once notify Norwood that he had breached the agreement by not assigning or otherwise transferring the Dreyer's distributor agreement, or that it wished to rescind the agreement due to this failure. Norwood would testify at trial that he learned for the first time during a meeting with Steven Buckner in May of 1994 that SDI had not successfully negotiated a written distributor agreement with Dreyer's. Norwood claims that during the meeting--where the parties discussed refinancing SDI's obligation--he offered to assist in obtaining the agreement, and Steve

Buckner declined this offer.

¶13.Although the monthly payments were cut nearly in half as a result of refinancing, Norwood alleges that by the end of the 1994, SDI still owed him $14,236.11 in past-due payments. By the end of November 1995, SDI allegedly owed $36,607.14. It is uncontested that SDI stopped making payments altogether in December of 1996. Norwood filed suit on May 27, 1997, to recover the remaining $104,715 balance owing.

¶14.SDI timely answered and raised several affirmative defenses including failure of consideration. SDI also counterclaimed for breach of contract. Although SDI claimed that Norwood's failure to assign or otherwise transfer the Dreyer's distribution agreement gave rise to SDI's right to stop making payments and rescind the contract, SDI nevertheless admitted that it had in fact distributed Dreyer's ice cream for more than two years. According to SDI, its business relations with Dreyer's was terminated in January 1996, by Dreyer's. No evidence was offered showing why this alleged termination occurred-- whether Dreyer's was dissatisfied with SDI's performance or simply sought relations with another party.

¶15.Related to these facts is SDI's central contention that it was never able to obtain a distribution contract with Dreyer's. Equally noteworthy, however, is the fact that no evidence was offered showing that SDI did not have a distribution contract with Dreyer's. Additionally, there was no evidence offered specifically describing the nature of the business relations between SDI and Dreyer's.

¶16.At trial, held September 14, 1998, Norwood called one witness, E. Earl Norwood. Following direct and cross examination, counsel for SDI rested without calling any witnesses. Counsel for Norwood requested that he be allowed to reopen, so that he could call his other named witnesses, whom he had anticipated counsel for SDI would call. The District Court denied this request. The District Court issued its Findings of Fact, Conclusions of Law, and Order on November 6, 1998, and entered a judgment in favor of SDI.

¶ 17.The court concluded that all of the above agreements were in fact one agreement with the total consideration of $575,000, and that the consulting agreement was "entered into as a fiction for the purpose of allowing Norwood to finance $200,000 of the purchase price in a fashion which is actually structured as a promissory note."

¶18.The District Court found that Norwood's corporation, Kay's Novelties, Inc., did not deliver to SDI the distributorship rights for Dreyer's products pursuant to the promise to sell, transfer and deliver "all of the Seller's right, title and interest in and to the Dreyer's and Dove distributorships." Accordingly, the court found that SDI never received a written distributor agreement from either Kay's Novelties, Inc., or Dreyer's. The District Court's findings indicate that Norwood made no effort to secure the written distributorship for the Dreyer's food products in the same manner as he had helped Ultrafoods obtain the Haagen-Dazs distributorship.

¶19.The District Court concluded that Norwood promised to deliver the Dreyer's distributorship to SDI, a promise that he never had the ability to fulfill. As a result, the District Court concluded that Norwood's consideration for the transaction had failed. Due to this failure of consideration, SDI was relieved of the obligation to make any further payments to Norwood as of December 1996. At the time this dispute arose, SDI had paid Norwood $95,285, leaving a balance of $104,715. This amount owing is undisputed. The District Court concluded that the contract was voided, and the agreement could be rescinded by SDI back to the date it had stopped making payments in December of 1996.

¶20.The District Court ordered that the Buckners, as guarantors of the consulting agreement, were released from any obligation to Norwood, and that because the contract was void, the attorney's fee provision was inapplicable.

## Standard of Review

¶21.This Court reviews the findings of a trial court sitting without a jury to determine if the court's findings are clearly erroneous. Rule 52(a), M.R.Civ.P. A district court's findings are clearly erroneous if they are not supported by substantial credible evidence, if the trial court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *Whalen v. Taylor* (1996), 278 Mont. 293, 299, 925 P.2d 462, 465. Additionally, in determining whether the trial court's findings are supported by substantial credible evidence, this Court must view the evidence in the light most favorable to the prevailing party. *Roberts v. Mission Valley Concrete Indus.* (1986), 222 Mont. 268, 271, 721 P.2d 355, 357.

¶22.We review a district court's conclusions of law to determine whether those conclusions are correct. *Hollister v. Forsythe* (1995), 270 Mont. 91, 93, 889 P.2d 1205,

1206 (citation omitted).

## Discussion

¶23.We will not disturb the District Court's finding as well as its conclusion that the three agreements here comprise one transaction with a total purchase price of $575,000. The evidence is substantial that the three separate agreements memorialized one transaction for the sale and purchase of the respective ice cream distributorship businesses. Further, it is undisputed that the "consulting agreement" was merely a promissory note, whereby Norwood agreed to finance the $200,000 balance of the $575,000 purchase price. Finally, we conclude that there is substantial evidence that Norwood did not "sell, transfer, assign and deliver" Kay's Novelties, Inc.'s distributor agreement with Dreyer's to SDI as promised. To this extent, we affirm the findings and conclusions of the District Court.

¶24.Before addressing the specific issues raised by Norwood, however, a preliminary review of the law under which the District Court entered judgment in favor of SDI is necessary.

¶25.The District Court concluded that Norwood's failure to deliver the Dreyer's distributor agreement to SDI--which was "one part of his obligation"--constituted a failure of consideration. The court granted SDI the right to rescind the contract, concluding that the contract "was rendered void by this failure of consideration." Thus, the court concluded that SDI was relieved of its obligation to further perform under the "consulting agreement," thereby canceling SDI's $104,000 debt to Norwood.

¶26.First, as a matter of law, the District Court erred by concluding that, under the equitable doctrine of rescission, SDI could be excused from further performing without making a requisite finding that SDI had in fact been damaged. As this Court has often stated "courts of equity, like courts of law . . . do not concern themselves with wrongs which do not produce injury." *Beierle v. Taylor* (1974), 164 Mont. 436, 440-41, 524 P.2d 783, 785 (citations omitted).

¶27.In *Beierle*, we affirmed summary judgment for the sellers of a motel who, similar to Norwood, failed to deliver as promised a particular document at closing. We agreed with the district court that this alleged "partial failure of consideration," resulted in no damage and therefore could not support a claim for rescission. *Beierle*, 164 Mont. at 441, 524 P.2d at 785.

¶28.Here, Norwood admits that he failed to assign the Dreyer's distributor agreement at or prior to closing in October of 1993. The District Court nevertheless found that a "distributorship interest" between SDI and Dreyer's began in October, 1993, and continued for more than two years. The court found that this "distributorship interest" or "operating privileges" ended in January 1996, after Dreyer's notified SDI that it would no longer allow SDI to distribute its products. There is no further indication in the court's findings or conclusions that SDI was in any manner damaged, or otherwise "disturbed in his possession" by the failure of Norwood to assign the distributor agreement. *See Beierle*, 164 Mont. at 440, 524 P.2d at 785 (citations omitted). Absent such a finding, the District Court's conclusion that SDI could rescind the contract was incorrect. This critical oversight must be properly addressed upon remand.

¶29.Of further relevance to our preliminary discussion, this Court recently restated certain indelible guiding principles that originally appeared in Montana case law at mid-century:

A breach which goes to only part of the consideration, is incidental and subordinate to the main purpose of the contract, and may be compensated in damages does not warrant a rescission of the contract; the injured party is still bound to perform his part of the agreement, and his only remedy for the breach consists of the damages he has suffered therefrom.

*Flaig v. Gramm, 1999 MT 181, ¶ 27, ___ Mont. ___, ¶ 27, 983 P.2d 396, ¶ 27 (citations omitted). The foregoing principle has survived verbatim since it was quoted from 12 Am.Jur. Contracts § 440 in 1946. See Johnson v. Meiers (1946), 118 Mont. 258, 263, 164 P.2d 1012, 1014. We explained this principle by stating that "[a] substantial or material breach is one which touches the fundamental purposes of the contract and defeats the object of the parties in making the contract." Flaig, ¶ 25 (quoting Rogers v. Relyea (1979), 184 Mont. 1, 8, 601 P.2d 37, 41). See also Restatement (Second) of Contracts § 241 (1981) (identifying five significant circumstances in determining whether a failure to render performance is material).*

¶30.On the other hand, § 28-2-1711, MCA, states: "[a] party to a contract may rescind the same in the following cases only. . . . (2) if, through the fault of the party as to whom he rescinds, the consideration for his obligation fails in whole or in part." Unchanged since it was first codified in 1895, this statute was followed in *Van Hook v. Baum* (1990), 245 Mont. 407, 411, 800 P.2d 151, 153, which is the one case cited in the District Court's Conclusions of Law.

¶31.Therefore, our case law flowing from *Johnson v. Meiers* is seemingly at odds with the

foregoing statute and related case law. On the one hand, a breach which goes to only "part of the consideration" does not warrant rescission; on the other, consideration for an obligation that fails "in part" may give rise to rescission as a remedy. This apparent conflict not only confuses the issues presented here--both parties here agree that the failure was "partial"--but has led to a similar degree of confusion in much of our case law. *Compare Turner v. Ferrin* (1988), 232 Mont. 146, 152-54, 757 P.2d 335, 338-40 (concluding that pursuant to § 28-2-1711(2), a claim for rescission was properly denied where there was no showing of a *material* or *substantial* lack of consideration), *with Beierle*, 164 Mont. at 440-41, 524 P.2d at 785 (suggesting that *partial* failure of consideration, pursuant to § 13-903, RCM, now codified under § 28-2-1711, may warrant rescission upon showing that buyer was "disturbed in his possession" or damaged).

¶32. With the intent of clarifying this matter, we first note that "failure of consideration," as either a claim or affirmative defense, does not relate to the absence of consideration, or whether there is "good" consideration necessary for the formation of a valid, enforceable contract pursuant to §§ 28-2-102 and 801, MCA.[2] Rather, the term pertains to the failure of one party's performance, which then suspends or excuses the performance of the other party pursuant to the terms of a valid contract. Thus, "failure of consideration" is generally synonymous with a material breach of performance of a contract, rather than whether a contract was enforceable due to the absence of the essential element of consideration. *See* John D. Calamari & Joseph M. Perillo, Contracts § 11-21 (3d ed. 1987). The Restatement approach, in fact, formally replaced the term "failure of consideration" with "failure of performance" due to the obvious confusion the term had created in various courts. *See* Restatement (Second) of Contracts § 237 cmt. a (1981), *and see*, *e.g.*, *Nordwick v. Berg* (1986), 223 Mont. 337, 340-41, 725 P.2d 1195, 1197 (suggesting that a "failure of consideration" claim requires analysis under §§ 28-2-102(4) and 801, MCA). Professor Samuel Williston, a long-time champion of retaining "failure of consideration" as a term of art, nevertheless provides the following rule:

Failure of consideration exists whenever one who has promised to give some performance fails, without his fault, to receive in some *material* respect the agreed exchange for that performance. Where the counter-promise to perform relates to a *material* matter, the disappointed party has the right to rescind the contract.

6 Williston on Contracts § 814, at 12-15 (3d ed. 1962) (emphasis added).

¶33. We conclude that in light of the prevailing authorities on this subject, a claim or

affirmative defense of "failure of consideration," which gives rise to the equitable remedy of rescission, requires a showing by the claiming party that the other party's failure to perform was in fact material to the contract. Whether there was "sufficient" or "good" consideration pursuant to §§ 28-2-102 and 801, MCA, is therefore immaterial to such an inquiry.

¶34. To reconcile this holding with § 28-2-1711(2), we conclude that a failure of "part" of a promised performance may warrant rescission, but only if the claiming party adequately proves that the deficient "part" of the other party's performance was in fact material to the contract. According to the District Court, Norwood's promise to assign the Dreyer's distributor agreement was only one "part" of his obligation. This partial failure to perform nevertheless may touch the "fundamental purpose of the contract" and defeat the "object of the parties in making the contract" and thus be deemed a material breach. *Flaig*, ¶ 25. *See also Berry v. Romain* (1981), 194 Mont. 400, 406, 632 P.2d 1127, 1131 (upholding the district court's determination that failure to deed adequate parking, which was part of a condominium sale, was a material failure of consideration warranting rescission). If the failure to perform was not material, however, the remedy of rescission is not available, performance cannot be excused, and the claiming party may only be entitled to money damages for breach. If such were the case, Norwood is correct that SDI is still contractually obligated to pay the remaining $104,715, which could possibly be offset by a showing of damages due to Norwood's failure to assign the Dreyer's distributor agreement.

¶35. We conclude, therefore, that the District Court erred when it did not determine whether Norwood's failure to assign the Dreyer's distributor agreement was material to the transaction as a whole. The determination of whether a material breach exists is a question of fact. *See Flaig*, ¶ 25. The District Court's findings and conclusions simply do not set forth any analysis or indication that Norwood's alleged failure to perform was a breach, and if so, whether it was material. While this Court adheres to the "doctrine of implied findings" we cannot conclude that the evidence supports an "implied" finding that a material breach occurred in support of the District Court's judgment. *See Berry*, 194 Mont. at 407, 632 P.2d at 1132 (concluding that implied findings supported district court's conclusion that a rescission should be granted under § 28-2-1711, MCA). Therefore, absent such a determination by the District Court, SDI could not, as a matter of law, rescind the contract and be excused from further performance of its obligation to Norwood. Again, this critical oversight must be addressed upon remand.

¶36. Finally, the District Court without explanation did not require that SDI return all of its

other acquired assets, or that Norwood refund the entire purchase price, which would have been consistent with our statutory doctrine of rescission. *See* § 28-2-1713(2), MCA, (requiring rescinding party to restore to the other party everything of value which he has received from him under the contract). *See also Cady v. Burton* (1993), 257 Mont. 529, 538, 851 P.2d 1047, 1053 (stating that the objective of rescission is to return the parties to the same position they would have occupied had they not entered into the contract) (citation omitted). Again, this critical oversight must be properly addressed upon remand, should rescission be warranted.

¶37. We now address the issues raised by Norwood.

## Issue 1.

Did the District Court err in adopting findings of fact, which were essential to SDI's burden of proof, even though no evidence was offered to support those findings?

¶38. Having reviewed the record, we agree with Norwood that the District Court's findings and conclusions are essentially the very same findings and conclusions proposed by SDI prior to trial. Norwood claims that SDI did not offer any evidence at trial in support of several of these proposed findings, nor did it file any post-trial findings omitting or modifying the pretrial proposed findings, which were not supported by substantial evidence. We conclude that Norwood is correct in these contentions as well.

¶39. We have discussed a trial court's verbatim adoption of proposed findings of fact and conclusions of law many times. *See, e.g., Baer v. Baer* (1982), 199 Mont. 21, 31, 647 P.2d 835, 841 (citing cases). While we have voiced stern disapproval of a court's wholesale adoption of proposed findings and conclusions, we have also acknowledged that we are governed by Rule 52(a) M.R.Civ.P. (stating that unless clearly erroneous, findings shall not be set aside, and a "court may adopt any such proposed findings or conclusions so long as they are supported by the evidence and law of the case"). *See Baer*, 199 Mont. at 31, 647 P.2d at 841. Accordingly, we must determine whether SDI's findings adopted essentially verbatim by the District Court are supported by substantial evidence in the record.

¶40. Norwood contends that no evidence supports the court's finding that he "made no effort to secure the written distributorship for the Dreyers food products as he had helped Ultrafoods obtain the Haagen-Dazs distributorship." We agree. No testimony or other

evidence alludes to, let alone supports this finding. It is not clear whether a Haagen-Dazs distributorship agreement--which included the same non-assignability provision--was ever assigned or transferred by Norwood to Ultrafoods at closing. Further, the evidence clearly shows that Norwood successfully arranged for meetings between the representatives of SDI and both Dreyer's and Haagen-Dazs, and SDI later refused Norwood's offer to assist with obtaining the written agreement with Dreyer's. The evidence additionally shows that SDI was made aware of the assignment-restriction provisions found in the respective distributorship agreements well in advance of signing the buy-sell agreements on September 13, 1993, and the October 15, 1993 closing date.

¶41.Likewise, no evidence supports the finding that "Dreyer's notified SDI that it would no longer allow SDI to distribute its products." The exact nature of the relationship between Dreyer's and SDI remains shrouded in mystery due to SDI's failure to support its affirmative defense and counterclaims with any evidence at trial. Therefore, the court's findings and conclusion that "SDI never received . . . a written distributorship agreement" from Dreyer's, and the "business relationship" or "operating privileges" ended without "a written distributorship ever being obtained by [SDI]," is not supported by substantial evidence, and is therefore clearly erroneous and legally incorrect.

¶42.Although we have already affirmed the conclusion that the consulting agreement was nothing more than a promissory note, the District Court nevertheless erred in concluding that this "loan of money" was for the purchase of "a distributorship right which was not delivered." The evidence clearly shows that the promissory note for $200,000 covered the remaining balance of the entire $575,000 transaction, which included three distributorships, involving numerous business assets. In particular, the uncontested evidence shows that the only item missing from the transfer of the Dreyer's distributorship was one document, which would have guaranteed SDI's distribution rights for at the most 30 days, and that this document was not accorded any monetary value in the purchase and sale agreement. Therefore, the District Court's findings and conclusions suggesting that the $200,000 promissory note resulted from the purchase of a "distributorship right" is also clearly erroneous and legally incorrect.

¶43.We also fault the District Court's findings and conclusion that there was a failure of consideration "due to Norwood's promise to deliver that which he had no right to deliver; namely, the Dreyer's distributorship." The evidence clearly shows that there was a distinct difference between selling and thereby transferring the interest in the Dreyer's "distributorship" and merely assigning the written Dreyer's distributor agreement. The

evidence shows that SDI agreed to purchase, and Norwood agreed to sell, all "right, title and interest in and to the assets" of Kay's Novelties, Inc.'s Dreyer's distributorship. In addition to a written agreement with Dreyer's, the distributorship included furnishings, equipment, supplies, goodwill, contract rights, accounts receivable, inventory, and leaseholds. The $125,000 purchase price for the Dreyer's and Dove distributorships was expressly allocated between "Equipment" valued at $43,000, and "Inventory" valued at $82,000. That the "right, title and interest" of what was transferred somehow was rendered valueless without the one written document is clearly contradicted by the admitted fact that SDI distributed Dreyer's ice cream for more than two years following the transfer of the distributorship assets.

¶44.In accordance with the foregoing, we hold that, to the extent they have been addressed above, the District Court's findings of fact are not supported by substantial evidence and are therefore clearly erroneous, and that its legal conclusions based on these findings are incorrect.

## Issue 2.

Did the District Court err by finding a failure of consideration where the uncontroverted evidence establishes that SDI waived its right to claim failure of consideration?

¶45.On appeal, Norwood argues that one party's default in performance of a contract may be waived by the other contracting party and cites to our decision in *Pipe Indus. Ins. v. Consolidated Pipe Trades Trust* (1988), 233 Mont. 162, 760 P.2d 711, which states the general law of waiver. *See also* § 28-1-1112, MCA (stating that a person to whom a tender is made "must at the time specify any objection he may have to the money, instrument, or property or he must be deemed to have waived it"). Also of critical relevance, however, is the rule that "[m]ere failure to take steps to enforce a legal right under a contract in a timely manner is not, by itself, sufficient to constitute proof of waiver." *Pipe Industry*, 233 Mont. at 170, 760 P.2d at 716. Rather, a party claiming waiver must prove that the language or conduct by the other party showed, in an unequivocal manner, that the party voluntarily and intentionally relinquished the right to receive the full benefit of the a contract. *See Pipe Industry*, 233 Mont. at 170, 760 P.2d at 716.

¶46.Norwood argues that because SDI was aware that he would not assign the Dreyer's agreement at or prior to closing, then accepted his performance, and thereafter refused his assistance in obtaining a written agreement with Dreyer's, it voluntarily and intentionally

waived the right to later claim that his consideration had failed. Norwood first raised this issue in his reply to SDI's counterclaim and now contends that this theory was further developed by the testimonial and documentary evidence. Norwood argues that in light of such evidence, the District Court erred in finding and concluding that SDI could prevail on its affirmative defense of failure of consideration.

¶47.In addressing this issue, we first conclude that based on its own Findings of Fact, the District Court should have determined whether SDI's affirmative defense of failure of consideration warranting rescission could be sustained as a matter of law. A rescinding party, under the theory of failure of consideration pursuant to § 28-2-1711, MCA, must also meet the requirements of § 28-2-1713, MCA, which provides in part:

Rescission, when not effected by consent, can be accomplished only by the use on the part of the party rescinding of reasonable diligence to comply with the following rules:

(1) He must rescind promptly upon discovering the facts which entitle him to rescind if he is free from duress, menace, undue influence, or disability and is aware of his right to rescind.

¶48.Therefore, even though a party may be entitled to rescind a contract due to a failure of consideration, as we have discussed that concept in our preliminary analysis, the "rescinding party must use reasonable diligence and take action within a reasonable time upon discovering the facts which entitle him to rescind." *Liddle v. Petty* (1991), 249 Mont. 442, 447, 816 P.2d 1066, 1069 (quoting *Berry v. Romain* (1981), 194 Mont. 400, 632 P.2d 1127).

¶49.In *Liddle*, which is factually similar to the case here, the buyer, Petty, under a contract for deed, stopped making installment payments due to what he contended was a material breach by the Liddles in not helping him obtain a mortgage release from a bank as promised in the parties' contract. The district court found, however, that Petty did not notify the Liddles of his inability to obtain the release for more than two years. Even then, as is the case here, Petty's claim was merely in response to the suit filed by the Liddles for his default in failing to make the annual loan payments. *Liddle*, 249 Mont. at 447, 816 P.2d at 1069. We upheld the decision of the district court that concluded Petty was not entitled to suspend performance of the contract when he "had failed to use reasonable diligence to rescind promptly upon discovering the facts." *Liddle*, 249 Mont. at 448, 816 P.2d at 1069.

¶50.Accordingly, we hold it was in error for the District Court to conclude that SDI could rescind the contract under a theory of failure of consideration (assuming the court first determined there was a material breach) without also determining whether SDI had complied with the mandates of § 28-2-1713, MCA. Again, this critical oversight must be addressed upon remand.

¶51.As for Norwood's specific contention that the District Court misapprehended the effect of the evidence pertaining to his waiver theory, our standard of review requires that we consider the evidence in the light most favorable to SDI. *Roberts*, 222 Mont. at 271, 721 P.2d at 357. Moreover, we do not have the benefit of specific findings or conclusions regarding Norwood's waiver theory. Nevertheless, we do not consider the conflicting evidence raised by Norwood sufficient to support a conclusion that SDI had "voluntarily and intentionally" waived all of its contractual rights to Norwood's promise to assign the Dreyer's distributor agreement. We hold that without sufficient findings and conclusions regarding Norwood's waiver theory, the issue must be further addressed by the District Court on remand.

## Issue 3.

Should this matter be remanded with instructions to enter judgment for Norwood when the trial court record established that SDI did not meet the burden of proof on its alleged defense?

¶52.Norwood argues that because there is little or no conflict in the evidence, and because SDI failed to meet its burden of proof, this Court should determine the rights of the parties and enter judgment in his favor and against SDI. Norwood contends that pursuant to § 26-1-402, MCA, SDI had the burden of persuasion as to each fact essential to its claim or defense, which included the "amount of detriment sustained," and that SDI chose not to present any evidence at trial supporting its contentions.

¶53.Norwood correctly states that pursuant to § 3-2-204, MCA, this Court may "affirm, reverse, or modify any judgment or order appealed from and may direct the proper judgment or order to be entered or direct a new trial or further proceedings to be had." Our most recent decisions under this statute, however, involved summary judgments. *See, e.g.*, *Jarrett v. Valley Park, Inc.* (1996), 277 Mont. 333, 922 P.2d 485. In *Jarrett* we stated:

In the usual summary judgment case where we reverse an order of the district court

granting summary judgment, that resolution is based on our conclusion that genuine issues of material fact exist which preclude the moving party's entitlement to judgment as a matter of law. Under that circumstance, a reversal of the district court necessitates a remand for trial in which the factual issues will be determined by the trier of fact. Where all of the facts bearing on the resolution of the legal issues are before us, however, this Court has the power to reverse a district court's grant of summary judgment and direct it to enter summary judgment in favor of the other party.

*Jarrett*, 277 Mont. at 346, 922 P.2d at 492 (citations omitted).

¶54.Without limiting our statutory authority under § 3-2-204, MCA, we nevertheless conclude that where a district court has issued findings and conclusions, and where *potential* factual issues may still exist, those matters are best left for determination by the trier of fact on remand. Our reasoning is influenced by a caveat that has, over time, been omitted from the general rule stated in *Jarrett*. In *Alley v. Butte & Western Mining Co.* (1926), 77 Mont. 477, 251 P. 517, we stated substantially the same rule, but added that this Court could not enter judgment if "such action *might*, in the opinion of the court, work an injustice." *Alley*, 77 Mont. at 497, 251 P. at 524 (emphasis added). Here, due to the unsupported findings and incorrect conclusions of law previously discussed, we conclude that such critical questions as whether SDI was damaged, whether Norwood breached and if so whether it was material, whether SDI diligently rescinded, and whether SDI waived any of its rights under the contract remain to be determined. These will require new findings and conclusions by the District Court upon remand. We therefore hold that it would be improper, at this point, to instruct the District Court to enter judgment for Norwood.

## Conclusion

¶55.As a final matter, we conclude that the District Court erred in determining that because "the contract is void, the attorney's fees and costs provisions is inapplicable." This is an incorrect statement of the law. The "consulting agreement" included the following provision:

In the event litigation between the parties arises out of the performance and/or non-performance of this Agreement, the prevailing party shall be entitled to recover all costs and fees, including attorney's fees incurred in such litigation.

¶56.In identical circumstances, we upheld an award of attorney's fees pursuant to a similar contract provision, even though the "prevailing party" had in fact succeeded in rescinding the contract. *See Carey v. Wallner* (1986), 223 Mont. 260, 267, 725 P.2d 557, 562. While we did not provide any underlying reasoning in *Carey*, we now conclude that the following is persuasive:

[W]hen parties enter into a contract and litigation later ensues over that contract, attorney's fees may be recovered under a prevailing-party attorney's fee provision contained therein even though the contract is rescinded or held to be unenforceable. The legal fictions which accompany a judgment of rescission do not change the fact that a contract did exist. It would be unjust to preclude the prevailing party to the dispute over the contract which led to its rescission from recovering the very attorney's fees which were contemplated by that contract.

*Mackintosh v. California Sav. Fed. (Nev. 1997), 935 P.2d 1154, 1162 (quoting Katz v. Van Der Noord (Fla. 1989), 546 So.2d 1047, 1049). We therefore hold that when a contract is rescinded due to the material failure of performance by one party, the prevailing party may be awarded attorney's fees pursuant to an express provision in the contract.*

¶57.Based upon the foregoing, the trial court's judgment is reversed and this case is remanded for further proceedings consistent with this opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ W. WILLIAM LEAPHART

/S/ WILLIAM E. HUNT, SR.

/S/ KARLA M. GRAY

1. At the time of the negotiations, the businesses were owned by Norwood and his former wife. Subsequent to the division of their marital property following dissolution, Norwood became the sole owner of the businesses subject to this appeal.

2. Pursuant to § 28-2-102(4), MCA, it is essential to the existence of a contract that there be "sufficient cause or consideration." Pursuant to § 28-2-801, MCA, "[a]ny benefit conferred or agreed to be conferred upon the promisor by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor is a good consideration for a promise."